## STATE *v.* HARGROVES.

### (*Nashville.* February 21, 1900.)

1. SELF-DEFENSE. *Cannot be invoked, when.*

    A party cannot avail himself of the plea of self-defense, even if he is without fault in the first difficulty, where he leaves the scene of that difficulty declaring his purpose to see his adversary later, and, deviating from the road to his own home, obtains a gun, and, with the declaration that he intends to kill somebody or get killed, returns and seeks his adversary and shoots him, while the latter was known to be unarmed, and was making no demonstration except to escape. (*Post, pp. 113–116.*)

2. NEW TRIAL. *Not granted on affidavits, when.*

    Affidavits to the effect that a witness examined on the trial of a murder case stated after the trial that he had not told all he knew, and that the deceased had stayed at his house on the night before the killing, and had said he intended to get the defendant next day, afford no ground for new trial, where the witness himself or his affidavit is not introduced. (*Post, p. 116.*)

3. JURY. *Misconduct.*

    The mere fact that the officer in charge of a jury in a felony case left the premises temporarily where the jury were confined, affords no ground for new trial, where it does not appear that there was any separation of or communication with the jury during his absence, but it is shown, on the contrary, by affidavits of jurors, that they were confined in rooms whose doors and windows were reasonably secured and fastened, and at no time opened, and that, in fact, no separation of or communication with the jury occurred. (*Post, pp. 116, 117.*)

4. EVIDENCE. *Elicited by Court.*

    It is not error for the trial Judge to ask, in a proper and impartial manner, questions calculated to bring out the facts of a

State *v.* Hargroves.

transaction already inquired about, for the better information of himself and the jury. (*Post, pp. 117, 118.*)

FROM LAWRENCE.

Appeal in error from Circuit Court of Lawrence County. ROBT. B. WILLIAMS, J.

ATTORNEY-GENERAL PICKLE for State.

J. B. WAGSTAFF for Hargroves.

WILKES, J. The defendant is convicted of murder in the second degree, and sentenced to the penitentiary for twenty years, and has appealed. It appears that he and deceased, Ogle, and a man named Bailey were together on Sunday morning drinking and playing craps. The defendant won $3.25 from Ogle, and $1.40 from Bailey, and then declined to play any further. Thereupon a quarrel ensued and some harsh words passed and demonstrations were made, which indicated that the other parties intended to do defendant violence, unless he gave up the money he had won from them. The result was that he did give it up, and, as he says, some of his own besides. The defendant's version is that the other parties robbed him and drew a knife on him and at-

20 P—8

tempted to cut him. This is denied by Bailey
and by Orten, another party who was present.
We think that the defendant's version of this
matter is in the main correct, though exaggerated.
After the quarrel was over and the money had
been given up, the defendant left and went down
the road, saying he would see them later. He
was asked to wait, as the other parties were
going the same direction, but he replied to them
"to go to hell." It seems that a shot or two
was fired about this time. Defendant says they
were at him, but the proof on this point is
quite indefinite.

He went down the road about a mile to Tom
Rochell's and tried to borrow a gun, but failed,
and then went on a half mile farther to Granville
Rochell's and obtained his double-barreled shotgun
from his wife, and some extra shells, saying he
wanted to kill a mad dog and might miss the
first shot. In going to Granville Rochell's he
passed by the road which led to his own home,
and after getting the gun he came back and
again passed the same road to his own home,
some 250 or 300 yards, in order to meet the
other parties. To several persons along the way
he said he was going to kill somebody, or get
killed. He also says that his reason for passing his
road home was that the parties called him, but
in this he is not supported by any other wit-

ness. He also says as a reason for passing his road home, that he was afraid the parties would pursue him and kill him in the presence of his family. As he approached the parties, he presented his gun at first one and then the other. Bailey asked if the matter could not be settled, and he replied it could, if Bailey and Ogle would each throw him a dollar. They refused to do this, and an altercation ensued. In the course of this deceased said he was unarmed, and the defendant replied "he knew it, and was going to kill him." He was very mad, and highly excited, and drew his gun on Ogle, and shot him. It appears that Ogle, at the time he was shot, was manifesting an intention to get over a fence and retire.

Defendant says, however, that he put his hand on his hip pocket, and made demonstrations as if to cut or shoot him.

It appears that Ogle had no arms upon him unless it was a knife, and that is doubtful. After shooting Ogle, he reloaded the gun and the other parties fled.

Defendant's contention is, that after the first difficulty he armed himself in self-defense, and that he shot defendant when he was making a demonstration as if to draw a pistol.

But it is clear from the evidence in this case that defendant passed his own road home and went to a neighbor's to get a gun, and after getting it,

did not go home, but again passed his road home some 250 or 300 yards, until he met these parties, and the weight of the evidence is that he shot Ogle when he knew he was unarmed, and in his shirt sleeves, and without any demonstration at the time, and in pursuance of previous threats.

He appears, from the record, to have sought his antagonist and brought on the second difficulty, when he might have gone on home after he armed himself, and protected himself at his own home.

There are some affidavits for a new trial, but they were not deemed sufficient by the trial Judge, and we think he was correct. The principal one is that one of the witnesses examined stated, after the trial, that he had not told all he knew, and that Ogle and Bailey had stayed at his house the night before the killing, and said they intended to get defendant out next day and "do him up." The witness who it is said would so state was not brought back and examined, and the Court had no assurance he would so state on a new trial. Besides, it would not be material, in view of the fact that defendant brought on the second difficulty after he was free from the first one.

An effort is made to show misconduct on the part of the jury, or an opportunity for it. There is no proof or intimation that the jury sepa-

State *v.* Hargroves.

rated, or that anybody communicated with them. They were confined in a room which had several doors and windows, which were reasonably secured and fastened, and were at no time opened, and three of the jurors testify that there was no communication with any of them, nor any improper conduct. It is shown that the officers were on the outside, and that they did leave the premises and go down into the town, but there is an absence of any proof that any communication was had, or anything improper occurred. We do not find anything to show improper conduct or tampering with the jury, but, on the contrary, it appears that there was no improper conduct or communication.

Objection was made to questions put by the trial Judge which served to bring out more fully, and in detail, the fact that defendant passed by his road home in going after the gun and in returning with it. This fact had been brought out by the district attorney in the examination of defendant himself. This was very important, and we think the object of the trial Judge was to bring out more fully the facts about the localities.

The examination was intended to make more plain what had already appeared, and the trial Judge was not, as we think, intending to indicate to the jury his impression, but rather to get the

facts more clearly brought out for the information of the jury and of himself, and to give the defendant opportunity to give such explanation as he could.

We think, under the facts, that there is no reversible error in the record, and the judgment of the Court below is affirmed.