WALTER ENGLISH and HAROLD GRANT

*v.*

STATE OF TENNESSEE

411 S.W.2d 702.

(*Knoxville,* September Term, 1966.)

Opinion filed November 14, 1966.

Petition for Rehearing Denied February 24, 1967.

BEN W. HOOPER, II, and EDWARD F. HURD, Newport, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, and EDGAR P. CALHOUN, Assistant Attorney General, Nashville, for the State, and H. F. SWANN, District Attorney General, of Dandridge, prosecuted the case in the trial Court.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were indicted in two separate cases, but these were consolidated and tried together. In one case these plaintiffs in error were charged with

robbery and larceny from the person. In the other case these plaintiffs in error, along with a third party, are charged with keeping a gaming house, gaming and professional gambling.

They were convicted in the first case of larceny from the person and sentenced to serve three (3) years in the penitentiary. In the second case they were convicted of gaming and their sentence fixed at one (1) year in the penitentiary. Both judgments have been seasonably appealed, able briefs filed and arguments heard. After a thorough consideration of the cases, we are now in a position to decide them.

The assignments of error may be summarized thus:

1. There is no evidence to support the verdict.

2. The evidence preponderates in favor of the innocence of the plaintiffs in error and against the verdict of the jury.

3. In the case wherein plaintiffs in error were convicted of larceny from the person it is shown that the facts constituting this crime are identical with the facts in the case wherein they were convicted of gaming. It involves the same place, time, transaction, and identical witnesses, and therefore the conviction of larceny from the person should be a bar from a conviction in the gaming case, since the entire offense committed was a single transaction.

4. The court invaded the province of the jury, when it returned its verdict in the gaming case and had not decided whether it was a misdemeanor or felony, in that the court in effect told the jury that the plaintiffs in error were guilty of a felony and not a misdemeanor.

5. The conviction of gaming, and it being made a felony, is not warranted since the return of gaming was a completed verdict under the misdemeanor count of this indictment, and it was error for the court to respite the jury again for the purpose of fixing the punishment and to retract their original verdict of "guilty of gaming" and finding the plaintiffs in error "guilty of the felony count" in said indictment.

6. The conduct of the trial judge in his examination of the plaintiffs in error was improper and denied them a fair and impartial trial as guaranteed by the Constitution of the United States and the Constitution of the State of Tennessee. The attitude of the trial judge was further manifested by his setting the bonds of the plaintiffs in error at the sums of $30,000.00 and $20,000.00 respectively, such action making it impossible for them to make bond for an offense which is bailable, and in effect was a violation of their constitutional rights.

A salesman for a tobacco company entered a place in Cocke County, known as Trucker's Home, on September 29, 1965. According to him, and the evidence thus accepted by the jury, he went in this place and asked his way to a community nearby. He says that when he went in there he saw the plaintiffs in error, Grant, and a man by the name of Porter. When he asked about directions to the community he was hunting for, instead of giving him the directions the plaintiff in error, Grant, and Mr. Porter said to him that they could not help him. Then it was that Mr. Porter called to someone in the back room. First a cook came out, then went back in and the plaintiff in error, English, came out.

The State's witness then says that the plaintiff in error, Grant, came around with a carton of beer and put it on

the counter. Then it was that the plaintiff in error, English, told this State's witness that as soon as he waited on plaintiffs in error, Grant, he would give him direction as to how to get to the community he was seeking. He says then that a deck of cards was produced and plaintiff in error, English, proceeded to play Grant double or nothing for the price of the beer.

He says then that English asked him to deal the cards but he refused. When he refused English shuffled the cards and asked him to cut them but he again refused. He says that English then dealt out three hands, one for English, one for Grant, and an "alternate hand".

Apparently plaintiff in error, Grant, won the beer and asked this witness to look at the "alternate hand". He says that he looked at it and that there was an ace on the bottom. He says then Grant told him that he would bet him a dollar on that hand, but this witness stated that he didn't want to have anything to do with it. He says that he then started to leave but that Grant said, "I will bet a dollar * * * that will be fifty cents apiece." This conversation was directed at this witness, who was there seeking the way to a nearby community, and to English. He says that he again started to leave but the man Porter walked between him and the door. He says then Grant caught him by the arm and pulled him back, saying, "that will be fifty cents for you and fifty cents for Mr. English."

He stated he was afraid to run out and that he put fifty cents up there. The bet then went from one to five or ten dollars and he again started to leave. This time, the plaintiff in error, Grant, took his arm and pulled him back while the man Porter remained at the door. Grant

then said, "that will be five dollars for you, son" but this witness replied that he wasn't playing. English then took five dollars from the cash drawer and put it on the counter before turning to this witness and demanded five dollars again from him. He says that he again replied that he wasn't playing but this time Grant "caught ahold of my arm and pulled me over there and reached in my pocket, took my billfold out and put it on the counter * * * "

Thereafter as the plaintiffs in error would bet, English would take money out of the cash drawer for Grant's bet and would take an equal amount out of the witness's billfold. When the game was over it appeared that this witness had "lost" some $85.00. Grant told him, "thanks a lot pal", and left with the beer and the money in an automobile which was parked on the outside.

This prosecutor, the State's witness, then was allowed to leave, and he said he was scared and didn't know exactly who to see in Cocke County. (This witness lived in Johnson City and was a traveling salesman.) He did make two or three stops thereafter at a couple of grocery stores and merely mentioned the matter casually to these grocers. He says the reason he mentioned it casually at the time he was scared, but later he went back to these two grocers and told them his tale as to what had happened and that the money he had lost belonged to his employer. These two grocers testified in substance about what this witness had told them as to how he lost his money.

The plaintiffs in error testified in their own behalf and maintained they won the money playing poker with this witness. These two plaintiffs in error had come to

Cocke County a short time before this happened with a carnival and remained there after the carnival left. English said that he had been convicted a number of times on a check charge and a burglary charge, and then changed the burglary charge on cross examination to a "narcotic conviction". Grant admitted on direct examination that he had been charged with two or three counts of fraud in the past. Thus it is, under this factual situation, which has been briefly summarized, that the two convictions referred to in the outset of this opinion were rendered.

T.C.A. sec. 39-4202 defines larceny thus:

"Larceny is the felonious taking and carrying away the personal goods of another, and is either grand or petit."

The following section denominates what constitutes grand and what constitutes petit larceny. The next section fixes the punishment of these grades of larceny from the person, thus:

"Any person who commits larceny by stealing from the person of another, shall be imprisoned in the penitentiary not less than three (3) years nor more than ten (10) years."

Wharton's Criminal Law and Procedure, Anderson, Volume 2, page 175, sec. 502, says that:

"Larceny aggravated by a taking from a person is specifically punishable as larceny from the person under the statutes of many jurisdictions. The statute may expressly define what circumstances must concur to constitute the offense. Whether such statutes exist or not, all offenders guilty of larcenies from the person

may, nevertheless, be indicted and tried for the simple larceny included therein, and they must be so tried unless specifically indicted under and in pursuance of such statutes. Wherever the common law is in force and no statute exists prescribing a different punishment for larceny from the person from that of other larcenies, the distinction between larceny from the person and other larceny does not exist, and every larceny from the person not arising to the grade of robbery becomes simple larceny. Larceny from the person differs from robbery in that the taking need not be effected by force or fear."

■ Thus it is that we have the statute above which fixes the punishment for the graver offense of larceny from the person, as above quoted. This question was likewise discussed in 32 Am.Jur., page 941, sec. 44, and 52 C.J.S. Larceny sec. 8 et seq., page 806. Clearly, under the cases cited in the various texts and our cases of *Fanning v. State,* 80 Tenn. 651, and *Chairs v. State,* 124 Tenn. 630, 139 S.W. 711, the facts adduced herein by the State, believed by the jury, and approved by the trial judge are sufficient to constitute an offense of larceny from the person as charged in this first indictment. Thus it is, under the first two assignments of error, it clearly appears to us that the evidence was sufficient and does not preponderate against the verdict of the jury.

■ Of course, in this jurisdiction, as in most, in a criminal case the appellate court will not reverse upon evidence unless the evidence does preponderate against the verdict. When a case is appealed here there is a presumption of guilt after the jury has thus found and the verdict has been approved by the trial court, and in this Court the credibility of the witnesses and the conflicts

in the testimony have been settled by the verdict of the jury and approval of the trial judge below. It is. the jury, of course, who sees the witnesses face to face and observes their demeanor as they testify. See *Cooper v. State*, 123 Tenn. 37, 138 S.W. 826, and many other cases that may be found to the same effect by Shepardizing the *Cooper* case.

In the second case in which they were convicted of the felony of gaming the indictment charged violation of T.C.A. sec. 39-2032 (Professional Gambling), violation of T.C.A. sec. 39-2003 (Keeping a Gambling House), and violation of T.C.A. sec. 39-2001 (Gaming). Violations of T.C.A. sec. 39-2003 and sec. 39-2001 are misdemeanors, while the violation of T.C.A. sec. 39-2032 is a felony, and it was under this Section that they were convicted in this case. The State argues that the felony count could be sustained herein on the theory that these parties maintained a place for the purpose of gaming and encouraged, promoted and gambled with ''one Theron Crain with cards and other gaming devices . . . in violation of Section 39-2032'', and that the testimony supports the same.

The State recognizes that this Court many years ago in *Dowdy v. State*, 158 Tenn. 364, 13 S.W.2d 794, laid down succinct rules wherein two convictions as here had might be had. In the *Dowdy* case the Court was dealing with a proposition of whether or not an indictment for drunkenness and drunk driving growing out of the same acts would be two or one offense. The States argues that the facts of this case bring it within the fourth ground as set out in the *Dowdy* case thus:

''4. But when the same facts constitute two or more offenses, wherein the lesser offense is not necessarily

involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act.''

■ Of course, in each of these cases it is necessary for the Court to carefully consider the facts of each particular case as to whether or not the conviction of one offense is a bar to the conviction for what is charged in the other. This Court in the *Dowdy* case very succinctly and logically showed wherein the conviction of one would be a bar to the other, or wherein there might be conviction for both offenses, citing many cases from this State and others supporting the reasoning there. In the *Dowdy* case the Court quotes from *Patmore v. State,* 152 Tenn. 281, 277 S.W. 892, thus:

''Even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice is not approved, and, certainly it must be clear that the offenses are wholly separate and distinct. Our own cases appear to prohibit the practice where the offenses grow out of one transaction and involve but one criminal intent.''

■ We might then paraphrase what was said in the *Dowdy* case with reference to the facts of this case. Here, plainly there is one set of facts. These fellows were standing around in this place playing cards and while doing so they manage to steal this money from the prosecutor, and this is all that there is in this record to show that it was a gaming house or anything of the kind to violate any of the statutes with reference to gaming

as above set out. It seems to us that the same acts are pyramided here to make two offenses. In the *Dowdy* case the Court said:

"The transaction was the same; the witnesses were the same. Both acts could have been presented in a single indictment of two counts, and, if it had been done, under our authorities there could have been but one punishment.

"To hold that the State may split the same transaction into independent indictments instead of including them in separate counts of one indictment would authorize the State by indirection to duplicate punishment for the same transaction, though forbidden by the rule announced in *State v. Covington*, 142 Tenn. 659, 222 S.W. 1 and *Patmore v. State*.

We think this reasoning and language is applicable to the facts of the instant case. Thus it is, the second case herein involving gaming is reversed and dismissed, because in the first case these men were convicted of larceny from a person growing out of the same facts, and, when thus convicted, the State certainly had no right to have a second conviction on facts growing out of the same and identical transaction.

■■■ A very able argument is made to the effect that an error was committed in the "larceny from the person" case when the trial court failed to charge the jury on the offense of petit larceny because the amount here taken was less than the amount necessary for grand larceny, and the jury should have had an opportunity to find the men guilty of petit larceny rather than larceny from the person. This is not error because in larceny from the person the amount of the larceny is not in issue—it is the

graver offense of larceny from the person that counts and not simple larceny. It seems to us under the facts herein there was no foundation for any intermediate grade, and thus the charge as given is correct. See *Patterson v. State,* 218 Tenn. 80, 409 S.W.2d 743.

By this holding errors 4 and 5, above referred to, need no response.

The final argument as to the first indictment, the larceny from the person indictment, in which we have held there was sufficient evidence to convict, is that these plaintiffs in error were denied a fair and impartial trial because of the method used by the trial judge in examining these plaintiffs in error, and the amount of the bail that he fixed for them.

█ We have read this record and can find nothing therein to indicate any prejudice on the part of the trial judge in his examination of these plaintiffs in error. Most, if not all, that he asked was more or less to satisfy himself about what was going on and what was done, and as far as the record shows we cannot find any reversible partiality shown to the State by the method in which this case was tried.

█ The fixing of bail was done after the verdicts were rendered and is not a matter that addresses itself to us at this time. The argument is made that this showed the trial judge's partiality. After bail is fixed, there are means and ways in which if the said bail is excessive, this can be brought to the attention of the appellate court before the matter reaches us on its merits, and then a suitable and proper bail could be fixed. We cannot see any error therein.

�rmal The trial judge, of course, may examine witnesses and get the facts not clearly brought out for the information of the jury and himself, and to give the parties thereto an opportunity to make such explanation as the rules of evidence permit. The trial judge on the bench is not a prosecutor or a defender but he is there to see that justice is done between all the parties, and it frequently becomes necessary to ask questions and do things of the kind to see that all the facts are brought out so that a fair and impartial judgment may be rendered. The State cites a few of our cases that have commented on this question as *State v. Hargroves,* 104 Tenn. 112, 56 S.W. 857; *Hill v. State,* 73 Tenn. 725; and *Bond Brothers, Inc. v. Spence,* 198 Tenn. 316, 279 S.W.2d 509. These and others illustrate the problem.

After having fully considered the matter we are satisfied as to the conviction on the larceny from the person indictment, and this judgment will be affirmed; the judgment on the gaming indictment is reversed.

## Opinion on Petition to Rehear

Counsel for the petitioners has filed herein a very forceful and dignified petition to rehear, wherein it is argued that from certain testimony of the witness, Suggs, it is stated or at least inferable that the witness testified that certain money taken by English was not taken from the person of the victim but was taken from his billfold which was lying on the counter.

▮ In the original brief and argument part of this testimony of the witness, Suggs, was quoted. It is now, on this petition to rehear, quoted in full. The argument was originally made that this offense merely constituted petit

larceny and did not constitute a violation of the statute of larceny from the person. Counsel cites a number of authorities, including that of *Fanning v. State,* 80 Tenn. 651, wherein it is held correctly that one who is charged in an indictment with larceny from the person may be found guilty of larceny, because larceny is included in the offense of larceny from the person.

 In our original opinion we did not have the argument made as now made, but answered the question that was made there that this offense was merely petit larceny and held that the trial judge did not err in his failure to charge the lesser offense of petit larceny. We said:

> "A very able argument is made to the effect that an error was committed in the 'larceny from the person' case when the trial court failed to charge the jury on the offense of petit larceny because the amount here taken was less than the amount necessary for grand larceny, and the jury should have had an opportunity to find the men guilty of petit larceny rather than larceny from the person. This is not error because in larceny from the person the amount of the larceny is not in issue—it is the graver offense of larceny from the person that counts and not simple larceny. It seems to us under the facts herein there was no foundation for any intermediate grade, and thus the charge as given is correct. See *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743."

After considering this petition to rehear and the full quotation of the testimony of this witness, Suggs, (we read the entire record before writing our original opinion and read this testimony) we think unquestionably that the

argument now made is answered by the above quotation from our original opinion. There is really no basic foundation for the charge of the lesser grade of petit larceny. All the facts were before the jury and, clearly, under the charge of the court and these facts, this record shows that the man is guilty of the offense charged. The mere fact that this witness, Suggs, was rather indefinite and says that the billfold might have been lying on the counter and not taken from his pocket, still brings the offense within the charge of larceny from the person.

Thus it is that after considering the matter again, and particularly this excellent petition to rehear, we find no error in this record and the petition to rehear must be overruled.

At the trial of this case the trial judge was not asked to specifically charge on this question, and, he having not charged the lesser offense, we think unquestionably that the evidence brings the case within that required of being guilty of larceny under the statute of larceny from the person and not petit larceny. We think the question now raised is answered by such cases as *State v. Hargrove,* 81 Tenn. 178; *Powers v. State,* 117 Tenn. 363, 97 S.W. 815; *Frazier v. State,* 117 Tenn. 430, 100 S.W. 94; and *Jones v. State,* 128 Tenn. 493, 161 S.W. 1016.

The petition to rehear is overruled.