Jimmy **PIQUE**, Appellant,

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Dec. 8, 1971.

Certiorari Denied by Supreme Court
May 1, 1972.

Fred L. Myers, Newport, for appellant.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Henry F. Swann, Dist. Atty. Gen., Dandridge, J. Howard Collett, Asst. Dist. Atty. Gen., Maynardville, for appellee.

## OPINION

MITCHELL, Judge.

Jimmy Pique, who will be referred to as the defendant or by name on November 23, 1970, was convicted in the Circuit Court of Jefferson County, Tennessee of burglary in the third degree of the business house of Baker Motors of Dandridge, Inc. on or about the 28th day of April, 1970. The jury fixed the punishment at three years in the State Penitentiary. After the motion for a new trial had been heard and overruled the trial judge Honorable George R. Shepherd pronounced judgment that the defendant Jimmy Pique for the offense of burglary be confined in the State Penitentiary for not less than three years nor more than three years and be rendered infamous and pay the costs. The defendant then prayed and was granted an appeal which he perfected and has assigned the following errors:

1. The Court erred in failing to sustain grounds I and II of the defendant's motion for a new trial going to the weight of the sufficiency of the evidence to convict the defendant for the offense of burglary, especially as to the identity by the State's witnesses as to the identity of the items allegedly stolen in the burglary.

2. Because the Court erred in refusing to sustain the defendant's motion for a mistrial on account of the misconduct of the District Attorney General making reference in the presence of the jury to the defendant taking or not taking the witness stand upon the trial.

3. Because the Court erred during the progress of the trial in conducting numerous and extended examinations of the witnesses on the witness stand, including the defendant which were beyond the purpose of clearing up obscure points and supplying omissions which the interest of justice demanded, and which were conducted in such a prejudicial manner as to prevent the defendant from having a fair trial.

F. M. Mason testified he was in the automobile business in Jefferson County under the corporate name of Baker Motors of Dandridge, Inc. That about April 28, 1970 the business house was burglarized by breaking a back window and by tearing down a door coming into the garage and on into the showroom and office. That they sell and repair cars, and in their office they had their bookkeeping system and wastebaskets and things like that, and that they kept cigarettes out in the showroom.

That the Coca-Cola machine had been broken into and the money taken out of it, the cigarette machine had been broken open and the money and cigarettes taken out of it, some small change that had been left in the cash register and a trash can, and some tools were missing. That the value of the goods stolen was approximately $70.00 or $80.00. That the Sheriff recovered a wastebasket belonging to Baker Motor Company.

Mr. Mason identified the wastebasket by some tape they had put on it in an effort to hold the lid open.

The cigarettes that were stolen were L&M, Camel, Salem and Pall Mall.

On cross examination Mr. Mason said he would not swear that the wastebasket was in his place.

Elmer Franklin testified that he was Sheriff of Jefferson County, that early in the morning before daylight on April 28, 1970 he received information about the burglary at Baker Motor Company. On investigation he found that the breaking and entering had been by a rear window. That the Coke machine and the cigarette machine had been broken into. That he received a communication from Knox County officers. That he sent one of his deputies John Holt to Knoxville and he brought back a basket of cigarettes and tools. That the defendant Pique was arrested. That he communicated with George Hipshire, a Knox County detective.

George Hipshire who at the time of this burglary was a patrolman with the Knox County Sheriff's Department, testified he had since been promoted to detective. That he had known the defendant Jimmy Pique for seven or eight years. That on the night of April 28, 1970 he and Officer Cawood were on Andrew Johnson Highway when he saw the defendant Jimmy Pique driving a '59 model Ford going down the road. Officer Hipshire testified he was sitting in a service station when he saw the defendant drive down in a white Ford which had no tail lights. That he turned his blue light, siren and spot lights on and followed the defendant's car. That the defendant speeded up his car and so did the officer. That the officer said "the faster he got the faster the defendant got." That he pursued the defendant, west on Andrew Johnson Highway to the Asheville Highway, for about three-quarters of a mile and went north on Molly Bright for approximately a mile to Pleasant Hill Road. Hipshire was in hot pursuit and the defend-

ant's car could not make the turn at a dead end where it went through a barbed wire fence into the field and bogged down in the mud. The defendant jumped out and ran. Hipshire testified he saw and recognized the defendant Jimmy Pique. That he saw in the defendant's car some loose packages of assorted cigarettes, and this crooked bar laying on the floor board. This wastebasket was in the trunk of the car filled with cigarettes.

Hipshire said they called the dispatcher for a wrecker and took all the stuff out of the car and took it to the records department and sometime the next day the department communicated with the Jefferson County authorities. Hipshire said he delivered the wastebasket, cigarettes and crowbars to Officer Holt of Jefferson County.

John Holt, Deputy Sheriff testified in April, 1970 he investigated a burglary at Baker Motors in Dandridge. That he went to the Knox County Jail where he contacted Officer Hipshire who had this merchandise in his possession. That he brought these tools these exhibits and merchandise back to Jefferson County which have been kept in custody of the Sheriff.

Miss Brenda Holland testified that in April, 1970 she was employed as bookkeeper at Baker Motors in Dandridge. That they had light colored beige wastebaskets. When asked if there was anything about this wastebasket that had been done to it that would have a mark on it she answered, "yes, sir we had tried to tape the lid onto the top of it." When asked if this (exhibit) was the wastebasket she answered, "it looks like it. To my best impression it looks like it."

The State then rested its case.

The defendant Jimmy Pique took the witness stand and testified in his own behalf. That he lived in Knoxville, and was 36 years old, and worked for S. L. Irwin Building Contractor. He denied any knowledge of, or connection with the bur-

glary of Baker Motors of Dandridge, except what he was later told by David Van Sent and Joe Brown to whom he had loaned his car about eight o'clock that night. After they had wrecked his car they told him about it and told him to report his car stolen. Van Sent and Brown did not testify. The defendant further testified that the car was registered in his name but he was not in the car in Dandridge nor at the time the officers were pursuing the car on the night of the burglary when the car was wrecked. He testified he spent the night in the apartment of Helen Varner from 5 o'clock in the afternoon, all through the night of the burglary, April 28, 1970 and did not leave her house until the next morning. He admitted he had his sister report to the officers that his car was stolen.

Helen Varner testified that on the night of the burglary the defendant came to her place about 5:00 P.M. His car was there when she went to get her hair fixed and when she came back about 9:00 P.M. Jimmy Pique was there but his car was gone. That the defendant was with her in her house at 1121 Louisiana Avenue, Knoxville, Tennessee all the night of the burglary about April 28, 1970 and that he did not leave her place that night. That he slept in the same bed with her. That Betty Stout, her girlfriend, (who did not testify) was helping her because her arm was out of place and in a sling. That Betty slept on the couch. That the next morning about 6 o'clock the defendant got a phone call. She heard the defendant report that his car had been stolen.

■ Jimmy Pique in his first assignment of error questions the weight and sufficiency of the evidence. In considering this assignment of error we are governed by the rule that the verdict of the jury, when approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Haas v. State, Tenn.Cr.App., 455 S.W.2d 634; White v. State, (1962), 210 Tenn. 78, 84, 356 S.W.2d 411; Anderson v. State, (1960), 207 Tenn. 486, 495, 341 S.W.2d 385; Cooper v. State, (1909), 123 Tenn. 37, 57, 59, 138 S.W. 826; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107.

This Court will not reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the defendant. We may review the evidence only to determine whether it preponderates against the verdict and in favor of the innocence of the defendant. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

The first assignment of error is without merit.

■ The defendant's second assignment of error charges that error was committed when the trial judge overruled the defendant's motion for a mistrial on the ground that the Sheriff in the presence of the jury made a reference to the defendant taking or not taking the witness stand.

The matter complained of arose when a state's witness completed his testimony and the court announced that this witness said he had to be back in Knoxville at 1:30. The witness spoke up and said he had to be back in Criminal Court in Knox County at 1:30. The District Attorney said, "We may have to—we can call you, it just depends on whether he takes the stand or not." Defense counsel then said;—"Now, if the Court please, we now ask for a mistrial." This was followed by a discussion of the matter by and between the defense counsel, the District Attorney and the Trial Judge, in which the District Attorney said, "If he takes the witness stand I will probably want to use him. There is nothing wrong with that."

The defendant did take the witness stand and testified and introduced the girl, with whom he insists he spent the night, as a witness in his behalf.

We are unable to find that the defendant's rights were in any way prejudiced by the remarks of the District Attorney. The assignment is overruled.

In his third assignment of error the defendant contends the trial judge erred in interrupting the defense counsel in his examination of the defendant as a witness and that the trial judge propounded questions to the defendant and other witnesses in the case and conducted numerous and extended examinations of witnesses on the stand and went far beyond the purpose of clearing up obscure points and supplying omissions which the interest of justice demanded. That his examination was conducted in a prejudicial manner and deprived the defendant of a fair trial.

Trial jurors, as a rule, are sensitive toward the words and actions of the Presiding Judge and generally have profound respect for him and look to him for instruction, guidance and directions as to the law and the conduct of the trial. For that reason as well as to insure a fair and an impartial trial, the trial judge must be extremely careful to avoid doing or saying anything that might prejudice the rights of the parties in the case.

In Brooks v. State, 187 Tenn. 67, 213 S.W.2d 7, the Court said:

"The jurors were likely influenced by the actions of the judge and the feeling manifested in his words and rulings during the trial. A trial judge should be very careful and not give expression to any thought that would be calculated to lead the jury to infer that his opinion was in favor or against the defendant in a criminal trial. 'One of the first purposes of orderly administration of the law is that a defendant, whether guilty or innocent, shall be accorded a fair trial. The fact that the judge may consider the accused to be guilty in nowise lessens his duty to see that he has a fair trial.' People v. Rongetti, 331 Ill. 581, 163 N.E. 373, 379."

Again our Supreme Court said in Collins v. State, 220 Tenn. 275, 416 S.W.2d 766:

"While it is true that the judge may ask questions now and then for the purpose of clearing up points that seem obscure, and supplying omissions, which the interest of justice demand, it is not proper that he conduct an extended examination of any witness, and particularly a prisoner on trial for his liberty or his life. Such a practice, if tolerated by this court, would be far more hurtful to the administration of justice than the escape of many prisoners. It is essential that trials shall be managed fairly, and that trial judges shall not only be just to both sides, but that they shall observe in their demeanor an even tenor, so that an impartial state of mind may be apparent to all concerned."

It was also held in State v. Hargroves, 104 Tenn. 112, 56 S.W. 857 that:

"Objection was made to questions put by the trial judge which served to bring out more fully and in detail the fact that defendant passed by his road home in going after the gun and in returning with it. This fact had been brought out by the district attorney in the examination of defendant himself. This was very important, and we think the object of the trial judge was to bring out more fully the facts about the localities."

"The examination was intended to make more plain what had already appeared, and the trial judge was not, as we think, intending to indicate to the jury his impression, but, rather, to get the facts more clearly brought out, for the information of the jury and of himself, and to give the defendant opportunity to give such explanation as he could."

The trial judge has a large discretion in the conduct of a trial and al-

though we think he conducted a more extended examination of witnesses than was necessary to clear up obscure points we are unable to find that the trial judge's examination of witnesses reached the proportions or dimensions described in Collins v. State, *supra*. We are unable to find that the defendant suffered any prejudice by the judge's questions, nor are we able to find that the trial judge abused his discretion.

The assignment is overruled.

The judgment is affirmed.

RUSSELL and DWYER, JJ., concur.