IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

**STATE OF TENNESSEE v. DANIEL RAY STYLES**

**Appeal from the Circuit Court for Cocke County**
**Nos. 7598, 7599, and 7616     Ben W. Hooper, II, Judge**

**No. E2001-00905-CCA-R3-CD**
**October 17, 2001**

The defendant, Daniel Ray Styles, was convicted of felony escape, aggravated assault, aggravated robbery, theft over $1,000, and aggravated criminal trespassing. The trial court imposed an effective sentence of fourteen years. On appeal, Defendant raises the following issues: (1) whether the trial court erred by failing to dismiss his case on the ground that his right to a speedy trial was violated; (2) whether the trial court erred in allowing the State to amend the indictments; (3) whether the indictment charging felony escape was facially void because it was unsigned; and (4) whether the trial court erred by failing to require the State to make an election between aggravated assault and aggravated robbery. After a review of the record, we affirm the judgment of the trial court regarding Defendant's convictions and sentences for aggravated robbery, felony escape, and aggravated criminal trespassing. However, we reverse and dismiss Defendant's convictions for aggravated assault and theft as violative of constitutional prohibitions against double jeopardy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in Part; Reversed and Dismissed, in Part.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Susanna L. Thomas, Newport, Tennessee, for the appellant, Daniel Ray Styles.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 27, 1997, Defendant was incarcerated at the Cocke County Jail and working on Morristown Highway performing "litter pick-up" with other inmates from the jail. At some point, Defendant escaped from the litter crew and subsequently arrived at the home of Antonio and Christina Meza. The Meza's daughter, Brandi France, previously had a two-year relationship with

Defendant which produced a child, and Defendant was permitted to visit occasionally. The Sheriff's Department would typically drop Defendant off at the Meza's home and return for him later. In this particular instance, however, Defendant's visit was obviously unscheduled. After he pounded on the door and was denied entrance, Defendant broke into the residence through a bedroom window. Walking into the living room, he discovered the presence of a twenty-year-old male, Matthew Means, and immediately began to interrogate him regarding his reason for being there and his relationship with Brandi France. Means informed Defendant that this information was "none of his business." Defendant asked Means whether he was "sleeping with his girl," and Means replied that Brandi was not "his girl."

Thereafter, Defendant and Brandi went into a bedroom to talk privately. When they emerged approximately ten minutes later, Defendant demanded the keys to Means' truck. Means refused. Defendant told Means to give him the keys or he would kill him, and Means refused again. At this point, Means' attention was distracted by something. When he turned to look at it, Defendant hit him on the back of the head with a fire poker, knocking him unconscious. Defendant then picked Means' keys up off the floor and departed with his truck. Sometime later, Defendant drove into a ditch and was arrested. Meanwhile, Means was taken to Cocke County Memorial Hospital where he was treated for a head wound and severe concussion, receiving five staples in the back of his head.

## ANALYSIS

### I. Right to a Speedy Trial

Defendant first contends that the trial court erred by refusing to dismiss his case on the ground that he was denied his constitutional right to a speedy trial. Defendant argues that the failure to try his case in a timely manner prejudiced his defense. We disagree.

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court adopted the four (4) part test promulgated in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), as the proper method for determining whether a defendant has been denied his constitutional right to a speedy trial. These four (4) factors include: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) whether the accused was prejudiced by the delay. Bishop, 493 S.W.2d at 84. No single factor is determinative in all cases, but the most crucial inquiry is whether the delay prejudiced Defendant. Tillery v. State, 565 S.W.2d 509 (Tenn. Crim. App. 1978).

First, we observe that Defendant was indicted on November 17, 1998, and his trial began on April 25, 2000. Thus, the length of delay from the date of Defendant's indictments to his trial equaled almost seventeen months which is sufficient to trigger an analysis under Bishop and Barker. See Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, n.1, 120 L.Ed.2d 520 (1992) (a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry").

Secondly, concerning the reason for the delay, the trial court stated that it found nothing in the record to indicate what caused the delay in Defendant's trial. Defendant contends that his trial was delayed because of a civil matter filed by Matthew Means against the Cocke County Sheriff's Department. However, this claim is also not clearly supported by the record. Since fault for the delay in trying this matter cannot be conclusively attributed to either Defendant or the State, we conclude that this factor does not favor either party.

Regarding whether Defendant asserted his right to a speedy trial, the trial court found that Defendant *initially* asserted this right in a court without any jurisdiction over his case at the time that the right was asserted. The record reflects that Defendant first filed his motion in Circuit Court, while his case was pending in General Sessions Court. Since the Circuit Court did not have jurisdiction over Defendant's case at that time, any motion filed in that court would be premature. Consequently, Defendant's right to a speedy trial was not asserted in the proper court, i.e., Circuit Court, until the day of trial when Defendant made an oral motion to dismiss the indictments on the ground that the State failed to provide him with such right. Moreover, the record does not contain the motion for speedy trial filed while the case was pending in the General Sessions Court. For the above reasons, this factor fails to support Defendant's argument.

The last factor, which considers whether a defendant was prejudiced by the delay, similarly fails to support Defendant's contention. Defendant asserts that because the State delayed in taking his case to trial, two defense witnesses died and this prejudiced his defense. Specifically, Defendant argues that the deceased witnesses, Officer R. D. Moore and Tim Doolittle, would have provided pivotal testimony concerning his whereabouts on the day he escaped from the litter crew. However, the record provides no proof of what facts these witnesses would have testified to. Furthermore, the trial court determined that Officer Moore died prior to the return of indictments against Defendant and that, since Doolittle died "sometime in 1998," his death may also have preceded the indictments (which were not returned until November 17, 1998). In sum, we concur with the trial court's finding that Defendant failed to demonstrate any prejudice resulting from the delay.

Accordingly, we find that Defendant was not denied his constitutional right to a speedy trial. Thus, he is not entitled to relief on this issue.

## II. Amendment of Indictment

Defendant argues that the trial court erred by permitting the State to amend the date of the offenses charged in indictment nos. 7616 and 7598, alleging aggravated robbery and felony escape, respectively, without giving him proper notice. Defendant further contends that the requested amendment was untimely and also precluded by Rule 7(b) of Tennessee's Rules of Criminal Procedure, which allows amendments over a defendant's objection *only if* no additional or different offense is charged and no substantial rights are affected. The State responds that the trial court's decision to allow the amendment was proper under Rule 7(b) and applicable case law. We agree.

The record reflects that on April 24, 2000, the day prior to Defendant's trial, the State filed a motion to amend the indictments alleging aggravated robbery and felony escape to read that the offenses occurred on September 17, 1997, rather than in July 1998. The indictments for the remaining counts, charging aggravated burglary, aggravated assault, and theft, showed the correct date as September 17, 1997. The trial court granted the State's motion on the date it was filed.

The trial court has the discretion to grant or deny a motion to amend an indictment, and this Court will alter such a ruling only where that discretion has been abused. State v. Kirkland, 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985). Rule 7(b) of Tennessee's Rules of Criminal Procedure states the following:

> An indictment, presentment or information may be amended in all cases with the consent of Defendant. *If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.*

(Emphasis added). Pursuant to this rule, the trial court had the discretion to allow the State to amend the date, since the date was immaterial and the amendment neither changed nor added an offense. See State v. Kennedy, 10 S.W.3d 280, 284 (Tenn. Crim. App. 1999) (a defendant is not charged with a new crime when the date in the indictment is merely corrected in order for the original charge to stand); State v. Badgett, 693 S.W.2d 917, 919 (Tenn. Crim. App. 1985) (amending the date in an indictment does not charge a defendant with a new or an additional crime).

Defendant also contends that the amendment interfered with his right to a grand jury indictment under Article I, section 14 of the Tennessee Constitution, because the grand jury never considered whether the proof was sufficient to indict him for the acts allegedly occurring on the amended offense date. However, because an amendment to correct an immaterial date in the indictment does not allege a new crime, Article I, section 14 concerns are not implicated. Kennedy, 10 S.W.3d at 284. Defendant is not entitled to relief on this issue.

### III. Unsigned Indictment

Next, Defendant alleges that the absence of any signature on the indictment charging felony escape renders it facially void. The indictment was signed by the foreman of the grand jury, but was not signed by the District Attorney General.

Initially, we observe that Defendant's entire argument concerning this issue consists of two statements: (1) the absence of a signature rendered the indictment invalid, and (2) the trial court erred by failing to dismiss it. Since this issue is not adequately briefed and Defendant declined to cite *any* legal authority to support his contention, this issue is waived. See Tenn. Ct. Crim. App. R. 10; Tenn. R. App. P. 27(a).

In addition to Defendant's failure to adequately support the issue, Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure further provides that objections of this nature should be raised prior to trial:

> Defenses and objections *based on defects in the indictment*, presentment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court during the pendency of the proceedings).

(Emphasis added). According to the record, Defendant objected to the unsigned indictment after the jury had been sworn and the trial had commenced  The trial court overruled the objection based on Defendant's failure to timely object to the alleged defect. Tenn. R. Crim. P. 12(f); see also Tenn. Code Ann. § 40-13-207 (1997). We find no error in this ruling. State v. Nixon, 977 S.W.2d 119, 121 (Tenn. Crim. App. 1997) (included within the class of indictment defects which must be raised prior to trial are defects that go to matters of form rather than substance, e.g., failure of the district attorney general to sign the indictment). Defendant is not entitled to relief on this issue.

### IV. Multiple Convictions  (Phrased by Defendant as an "Election of Offense" Issue)

Defendant also contends that the trial court erred by "failing to require the State to elect between aggravated assault and aggravated robbery." He essentially argues that his convictions for both of these offenses cannot stand because the elements of aggravated assault are included in the elements of aggravated robbery.  The State responds that Defendant's failure to support this contention with argument, citation to proper authorities, or appropriate references to the record, has effectively waived this issue.  Notwithstanding waiver, the State argues that the record contains sufficient proof to establish the elements for both aggravated assault and aggravated robbery as charged by the indictment. Despite Defendant's failure to artfully present this issue, our review of the record reveals evidence of plain error such that Defendant's convictions for aggravated assault, and also his conviction for theft, cannot be sustained in light of State v. Denton, 938 S.W.2d 373 (Tenn. 1996).

Where an error in the criminal proceedings concerning a defendant are found to affect the substantial rights of that defendant, the error may be noticed at any time, even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice. Tenn. R. Crim. P. 52(b). In determining whether an error constitutes "plain error," this Court set forth the following factors for consideration in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994):

> a) the record must clearly establish what occurred in the trial court;
> b) a clear and unequivocal rule of law must have been breached;
> c) a substantial right of the accused must have been adversely affected;
> d) the accused did not waive the issue for tactical reasons; and
> e) consideration of the error is 'necessary to do substantial justice.'

<u>Id.</u> at 641-42.  For the reasons following, our review of the record reveals that Defendant's convictions for aggravated assault and theft, in addition to his conviction for aggravated robbery, constitute multiple convictions for a single criminal offense and thus violate constitutional prohibitions against double jeopardy.  Because such violations satisfy the factors outlined in <u>Adkisson</u>, we conclude that plain error exists under the circumstances presented here.

To recount, Defendant's indictment alleges that he intentionally or knowingly caused bodily injury to the victim by the use of a deadly weapon, which is aggravated assault.  <u>See</u> Tenn. Code Ann. § 39-13-101(a)(1), -102(a)(1)(B) (1997).  Defendant was also indicted for obtaining property from the person of the victim by use of violence and a deadly weapon, which is defined as aggravated robbery, and for knowingly exercising control over property (a Toyota vehicle) without consent and with intent to deprive the owner, which is defined as theft.  <u>See</u> Tenn. Code Ann. §§ 39-13-402(a)(1), 39-14-103 (1997).  Because the elements of these offenses may require proof of similar facts, Defendant's dual convictions for aggravated robbery and aggravated assault, as well as aggravated robbery and theft, raise the double jeopardy concerns addressed herein.

In <u>State v. Denton</u>, 938 S.W.2d 373 (Tenn. 1996), the Tennessee Supreme Court reaffirmed the protections of Article I, section 10 of the Tennessee Constitution against multiple punishments for the same offense and provided a four-step analysis for use in determining when this circumstance exists: (1) an analysis of the two statutes in question, (2) an analysis of the evidence needed to prove the two offenses, (3) a consideration of the number of victims and discrete acts, and (4) a comparison of the purposes behind the two statutes.  <u>Id.</u> at 379-81.  These steps are weighed as they relate to each other, with no one factor being determinative.  <u>Id.</u> at 381.

## A.  *Aggravated Assault*

The initial inquiry under <u>Denton</u> involves analysis of the two statutory provisions, as provided in <u>Blockburger v. United States</u>: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." <u>Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932).

As alleged in the indictment in the case <u>sub judice</u>, to obtain a conviction for aggravated assault, the State had to prove that (1) Defendant intentionally or knowingly committed an assault as defined in Tenn. Code Ann. § 39-13-101(a)(1), (causing bodily injury); and (2) that Defendant used or displayed a deadly weapon.  <u>See</u> Tenn. Code Ann. § 39-13-102(a) (1997).  To obtain a conviction for aggravated robbery as indicted, the State was required to prove that (1) Defendant perpetrated an intentional or knowing theft of property from the person of the victim by violence; and (2) that Defendant accomplished the theft with a deadly weapon.  <u>See</u> Tenn. Code Ann. §§ 39-13-401, -402(a)(1) (1997). The offense of aggravated robbery requires proof that Defendant committed a theft of property, whereas aggravated assault does not.  On the other hand, aggravated

assault, as alleged, requires proof of bodily injury to the victim, whereas aggravated robbery does not. Therefore, strictly speaking, these offenses are not the "same" under a Blockburger analysis.

Conversely, analysis under the second prong of Denton indicates that dual convictions would violate constitutional prohibitions against double jeopardy. The evidence used to prove each offense is virtually identical. For aggravated assault, the State proved that Defendant intentionally or knowingly assaulted and injured the victim with a fire poker. The State's proof for aggravated robbery was that Defendant intentionally or knowingly used violence against the victim with a fire poker, and then took his keys and truck. For purposes of applying our robbery statute, the element of "violence" requires evidence of "physical force unlawfully exercised as to damage, injure or abuse." State v. Fitz, 19 S.W.3d 213, 217 (Tenn. 2000). Thus, the offense of aggravated assault was established by the same proof used to satisfy the violence element of the aggravated robbery offense.

The third step in the Denton analysis examines the number of victims and discrete acts involved. When there exists only one victim, as here, multiple convictions are generally unjustified. See Denton, 938 S.W.2d at 381. This is especially true when the evidence does not suggest that the aggravated assault of the victim and the robbery were two discrete acts. See English v. State, 411 S.W.2d 702, 707 (Tenn. 1966) (in a case where the defendants were convicted of gaming and larceny, and the conduct which led to the gaming charge was designed to facilitate the commission of larceny, the gaming conviction could not stand); Cf. State v. Black, 524 S.W.2d 913 (Tenn. 1975) (where defendant robbed victim at gunpoint and, afterward, stepped back and shot the victim in the leg, the robbery was considered completed prior to infliction of the wound and two separate and distinct offenses were committed, even though they occurred at substantially the same time and in the course of a single criminal episode); Denton, 938 S.W.2d 373, 379 n.14 ("When the legislature has made its intent clear that cumulative punishment is intended, such as in the case of felony murder and the underlying felony, see State v. Blackburn, 694 S.W.2d 934 (Tenn. 1985), our [double jeopardy] analysis under Black is pretermitted."). In the case sub judice, the facts show that Defendant demanded the victim's keys twice, and was refused both times, prior to hitting the victim in the head with a fire poker. Thus, it appears that Defendant assaulted the victim to further his commission of the robbery, that is, to obtain possession of the keys to the victim's vehicle, and that these crimes were committed in the course of a single criminal episode by a defendant with one objective: robbery.

The final step in a double jeopardy analysis requires us to examine the purposes of the statutes underlying the respective offenses to determine whether they further common goals. We observe that the purpose of the aggravated robbery statute, as applicable here, is to punish theft accomplished by the use of a deadly weapon, and the purpose of aggravated assault, as charged here, is to prohibit bodily injury caused by use of a deadly weapon. Clearly, one of the purposes of each statute is the prohibition of these offenses with a deadly weapon and also enhance the punishment for those found guilty.

In sum, after weighing each factor and considering their relation to each other, we find Defendant's convictions for both aggravated robbery and aggravated assault violate the principles

of double jeopardy. Although the statutes are not the "same" under a <u>Blockburger</u> analysis, essentially the same evidence supported both convictions, the offenses involved one victim, they arose from a single criminal act and resulted from a single criminal intent. Moreover, the statutes have similar purposes in that both offenses punish the accused who commits a crime against a person while armed with a deadly weapon. The harm sought to be punished in aggravated assault with a deadly weapon is encompassed in aggravated robbery committed with a deadly weapon, even though aggravated robbery also involves a theft and aggravated assault does not. This conclusion is consistent with one of the guiding principles for resolving double jeopardy punishment issues as quoted by our supreme court in <u>Denton</u>, which states that

> Even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice is not approved, and, *certainly it must be clear that the offenses are wholly separate and distinct* . . . . The power of election rests with the state, not the criminal, and the state should not split the transaction so as to subject the accused to cumulative sentences for the same offense or for different offenses involving the same act as a means of pyramiding punishment for two or more cognate offenses.

<u>Denton</u>, 938 S.W.2d at 380 (citations omitted) (emphasis added). Because only one conviction can be sustained, Defendant's conviction for aggravated assault is reversed and the charges for that offense are dismissed.

### B. Theft

Neither Defendant nor the State has addressed the issue whether Defendant's conviction for theft may be sustained. However, for the reasons following we find that double jeopardy principles require us to reverse and dismiss Defendant's conviction for this offense.

Here, Defendant was convicted of theft of property (a Toyota truck) valued at more than $1,000 but less than $10,000, a Class D felony. <u>See</u> Tenn. Code Ann. §§ 39-14-103, -105(3) (1997). Conviction for this offense required the State to prove that Defendant knowingly exercised control over property (in this case, the victim's Toyota truck) without consent and with intent to deprive the owner. <u>See</u> Tenn. Code Ann. § 39-14-103 (1997). Defendant's conviction for aggravated robbery was proved by evidence that Defendant obtained property from the person of the victim (specifically, the keys to the victim's Toyota truck) by use of violence and a deadly weapon. <u>See</u> Tenn. Code Ann. § 39-13-402(a)(1). Although a <u>Blockburger</u> analysis reveals that the provisions for these offenses are not the "same," that is, that the provision for aggravated robbery requires proof of use of violence and a deadly weapon which the provision for theft does not, convictions for both are prohibited in the case <u>sub judice</u>. According to the double jeopardy provisions of the constitutions of both the United States and Tennessee, a defendant may not be convicted of two offenses if one is a lesser-included offense of another under circumstances such as those presented here. <u>See</u> <u>Brown v. Ohio</u>, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226-27, 53 L.Ed.2d 187 (1977) (when one offense is classified as a lesser-included of another, the lesser offense is the "same" for purposes of double jeopardy

analysis where conviction for the lesser offense requires no proof beyond that necessary to convict for the greater offense). Case law, as well as the statutory elements for theft and aggravated robbery, reveal that theft is a lesser-included offense of aggravated robbery. See State v. Timothy R. Bowles, ___ S.W.3d ___, No. M1997-00092-SC-R11-CD, 2001 WL 856575, (Tenn. July 31, 2001) (it is uncontested that theft is a lesser-included offense of robbery (citing State v. Fitz, 19 S.W.3d 213, 216 (Tenn. 2000))); State v. Hayes, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999) (where defendant was convicted of aggravated robbery and theft of the same property, court reversed and dismissed the conviction for theft as a lesser-included offense of aggravated robbery).

Since the same evidence, taking of the victim's keys and truck, was used to prove both offenses, factor two of the Denton analysis likewise supports dismissal of the theft conviction. Although it may be argued that the aggravated robbery offense was completed when Defendant took the victim's keys, and this effectively severed this offense from the subsequent commission of theft for purposes of prosecution, this result is inconsistent from our decision in State v. William Jason McMahan, No. 03C01-9707-CR-00262, 1999 WL 177590, Knox County (Tenn. Crim. App., Knoxville, March 31, 1999) no perm. to app. filed. In McMahan, the defendant beat the victim until he was unconscious, and then took a set of car keys and a bag of marijuana from the victim's front pocket, removed an envelope containing the victim's money from the table, and left in the victim's car. In support of separate convictions for theft and aggravated robbery the State argued that, although the defendant beat the victim in order to take money and car keys from him, the defendant did not decide to take the car until after the beating was concluded. This Court was unpersuaded by the State's argument. Reversing the defendant's conviction for theft, we relied on State v. Lowery, 667 S.W.2d 52 (Tenn. 1984) in which the supreme court found that, in order to be convicted for both robbery and theft, the jury must find that the defendant formed the intent to steal the car *subsequent to stealing the money and the keys*. McMahan, 1999 WL 177590 at *9 (citing Lowery, 667 S.W.2d at 57). The facts in the case sub judice support a similar conclusion whereas Defendant clearly indicated his intent to take the car prior to striking the victim with the fire poker.

We further observe that the circumstances surrounding Defendant's convictions for theft and aggravated robbery also fail to support multiple convictions in that they involve neither multiple victims nor more than one discrete act. See id. (evidence does not indicate two discrete acts where defendant completed robbery by taking keys, drugs, and money immediately before taking the car). Lastly, concerning factor four, our supreme court has held that the statutory provisions concerning robbery and larceny protected overlapping interests: both protected property while robbery protected people as well. Lowery, 667 S.W.2d at 54. "The same reasoning also applies to aggravated robbery and theft." McMahan, 1999 WL 177590 at *9. Defendant's conviction for theft is reversed and dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's conviction and sentence for theft and aggravated assault are reversed and dismissed as violative of state and federal constitutional protections against

double jeopardy. We affirm Defendant's remaining convictions and the sentences imposed for those convictions.

_____
THOMAS T. WOODALL, JUDGE