**Bobby Floyd CLANCY, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

April 7, 1975.

Robert S. Peters, Winchester, for petitioner.

William J. Hayes, Jr., Asst. Atty. Gen., R. A. Ashley, Atty. Gen., Nashville, J. William Pope, Dist. Atty. Gen., Pikeville, for respondent.

OPINION

HENRY, Justice.

This criminal action hinges upon the sufficiency of the evidence to support a conviction for the offense of offering to pass a forged instrument in violation of Sec. 39–1704, T.C.A.

Petitioner and a female companion, Ruth Ida Parker, were jointly tried upon a two-count indictment charging forgery and offering to pass a forged instrument, and were convicted for the latter offense with punishment fixed at not less than three nor more than five years. Petitioner appealed

and the Court of Criminal Appeals, in a divided opinion, affirmed his conviction. We granted certiorari.

## I.

■ As a prelude to a proper understanding of the sufficiency of the evidence, we point out that the elements of the offense of uttering or passing a forged instrument are:

a. actual knowledge that the instrument is false,

b. representation, either direct or implied, that the instrument is genuine, and

c. intent to defraud.

Woffard v. State, 210 Tenn. 267, 358 S.W.2d 302 (1962); Keebler v. State, 3 Tenn.Cr.App. 447, 463 S.W.2d 151 (1970).

■■ The conviction in this case must be invalidated for failure of the proof to satisfy these criteria beyond a reasonable doubt. In fact there is no competent or credible evidence, direct or circumstantial, that the instrument was forged. The record is replete with suspicious circumstances in the milieu of a pattern of moral conduct calculated to provoke public disfavor—and perhaps to influence jury verdicts. But courts punish infractions of laws and cannot convict on the basis of suspicious circumstances and unconventional conduct.

## II.

These co-defendants joined forces in California and embarked on a cross-country tour which culminated in the Cumberland and Forty Winks Motels in Coffee County, Tennessee. In the early afternoon of 10 November 1972, they went to a sporting goods store in Estill Springs where each of them selected merchandise including a 12 gauge short-barreled deer gun. Mrs. Parker signed the Firearms Transaction Record which listed her name as transferee (buyer). In payment for all the selected merchandise, Mrs. Parker presented a printed check dated 10–18–72, in the amount of $131.54 (affixed by check-writing machine) payable to Ruth Ida Parker, drawn on McDonald's Hamburgers, and bearing the printed name of HOWARD WEISS and his purported signature. The storekeeper refused to accept the check and, of course, did not part with the merchandise. After Parker and Clancy left the store, law enforcement authorities were called.

They were apprehended in Manchester by City police officers and, by them, taken to the Coffee County Jail. After arriving at the jail, a search was conducted of their persons (according to petitioner) or their possessions were inventoried (according to the State). This search/inventory disclosed that Mrs. Parker had in her purse the above check, another in the amount of $91.52 payable to the petitioner, another in the amount of $131.54 payable to Everett Harris, and three additional ones payable to her. All were drawn on a McDonald's printed check form and all bore the purported signature of Howard Weiss. Additionally, she had thirteen unsigned checks, all on McDonald's printed form.

Petitioner had on his person an identification card in the name of Everett Harris, bearing a snapshot of petitioner and indicating that he was a McDonald employee. He also had a Food Stamp Identification Card and a Medi-Cal card, each in the name of Everett Harris. Notwithstanding these false documents, petitioner, at all times, identified himself as Bobby Floyd Clancy, and the record does not show that he used these false credentials.

Clearly this pair was up to no good and could hardly qualify for citizenship awards. However, the only item having any direct relevance to this offense was the one check Mrs. Parker attempted to pass at the sportmen's store.

On the day of their arrest, they were transferred to the Franklin County Jail where they were interviewed, separate and apart from each other and with no con-

frontation, by Lester Willingham, an agent of the Tennessee Bureau of Investigation. Each was promtly, fully and correctly given the *Miranda* warning and each made a statement.

Mrs. Parker made a full confession. Among other things she confessed that she tried to pass a check forged on McDonald's; that she had bought this and other checks from a "hippie dude" in California; that she had passed one of them in Long Beach, California, one in Houston, two in Alabama, one in Sarasota, Florida and four in and around the Murfreesboro area; that she had made the false identification card for Clancy and placed his picture on it. Her confession contained exculpatory statements as to the petitioner.

Petitioner's statement, among other things, admits the details of the shopping trip. The thrust of his statement is that Ruth Ida Parker presented a payroll check which was declined; that he knew Ruth had two checks but knew nothing else. He positively denied to agent Willingham any knowledge that the checks were stolen.

It will be borne in mind that this was a joint trial. The record reflects that a jury-out hearing was conducted on the admissibility of Mrs. Parker's confession. During this hearing it was the consistent and repeated contention of the District Attorney General that the confession was exculpatory as to petitioner.

The record reflects the following testimony during the jury-out hearing:

*General Pope*: Now a further statement that you don't have here, but subsequent to that, in court and other places in regard to Mrs. Parker, has not she told you that she is the party that is responsible for all of this and Mr. Clancy knew nothing about it?

*Mr. Willingham*: She made that statement in court here, yes, sir.

Again, at one stage of this hearing, out of the presence of the jury, the District Attorney, with reference to Mrs. Parker's confession, said:

. . . these are not inculpatory statements, these are exculpatory statements. I can't see where they are doing any damage.

Further, the District Attorney General requested that the trial judge "strongly admonish this jury that the statement of one is not admissible and to be considered as evidence against the other, only against that one giving the statement . . ."

The record reflects that the trial judge very clearly and correctly instructed the jury, immediately prior to the receipt of testimony regarding the confession, that:

(Y)ou cannot use the statements made by Ruth Ida Parker as evidence against Bobby Floyd Clancy . . .

Finally, the State concedes, in supplemental brief that Mrs. Parker's confession did not implicate or incriminate the petitioner.

■ Thus it is that the statements contained in her confession, except to the extent that they were presented by other witnesses, may not be considered by this Court against petitioner and should not have been considered by the trial jury.[1]

When the record is stripped of the confession, there is no proof—direct or circumstantial—that the check Mrs. Parker attempted to pass was forged or that peti-

---

[1]. We point out that neither defendant testified. The Court is thus confronted with a case involving a confessing but non-testifying co-defendant, and normally this would be a proper case for the invocation of the rule announced in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, in view of the exculpatory nature of the confession as to petitioner and of the fact that there is no insistence that the confession of Mrs. Parker be considered against petitioner and no suggestion that the jury did so consider it, we do not have a *Bruton* situation.

tioner had any knowledge of its falsity. Nor is there any evidence that he had knowledge of the assortment of checks carried by Mrs. Parker in her purse.

The Court of Criminal Appeals' opinion recites that "(i)t would take a remarkably naive and ingenuous jury to accept as reasonable the theory that this defendant had lived in intimate association with his co-defendant, as he did, without the knowledge that she had in her possession these checks . . ." We disagree. These were taken from Mrs. Parker's purse. A man's home is his castle and he will share it with those whom he loves, but a woman's purse is her own private and personal preserve, which she will share with no man and few men will dare to invade.

 We fully recognize that the corpus delicti may be proved by circumstantial evidence. Tines v. State, 203 Tenn. 612, 315 S.W.2d 111 (1958). However, we can find no competent evidence in this record sufficient to establish the forgery of the check presented by Mrs. Parker.

The false identification credentials are but suspicious circumstances.

The fact that these co-defendants' conduct contravened the accepted standards of society is but evidence of immorality.

The events at the sporting goods store would be strong evidence of petitioner's guilt if there were any evidence of forgery.

The fact that two of the checks were payable to him—one under an alias—has no relevance to this particular charge.

The theory of a joint enterprise is persuasive at first blush; however, stripped of Mrs. Parker's confession, there is no evidence of forgery.

We cannot speculate upon the guilt of one charged with the commission of a criminal offense. All, some, one, or none of these checks could have been forged. The proof does not provide the answer.

The District Attorney General apparently believed that it was necessary that there be proof of the forgery. The record reflects that Howard Weiss was scheduled to appear as a State's witness but missed his plane out of California. We find it difficult to believe that this experienced and able prosecutor would have made arrangements for this witness to have journeyed all they way from the West Coast to Winchester to utter merely cumulative proof.

We hold that the evidence adduced by the State was insufficient to establish the essential elements of the offense of offering to pass a forged instrument.

Reversed and dismissed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concurring.