**STATE of Tennessee, Appellee,**

v.

**Donald JENKINS and Edward Black, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 24, 1987.

Ben W. Hooper, II, Newport, for appellants.

W.J. Michael Cody, Atty. Gen. & Reporter, Robert Conley, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Phil Owens, Asst. Dist. Atty. Gen., Newport, for appellee.

## OPINION

JONES, Judge.

The appellants, Donald Jenkins and Edward Black, were convicted of possessing marijuana with intent to sell in violation of T.C.A. § 39–6–417(a) and possessing a sawed-off shotgun in violation of T.C.A. § 39–6–1713. The trial court granted Black's post-trial motion for judgment of acquittal, acquitting Black of possessing the sawed-off shotgun. After a sentencing hearing the trial judge sentenced Black to a term of three years in the Department of Corrections as a range one standard offender. Jenkins was sentenced to serve a term of one year in the Department of Corrections for the drug offense and ten days in the county jail for possessing the sawed-off shotgun as a range one standard offender. The trial judge permitted Jenkins to serve his sentences concurrently in the county jail.

The appellants have appealed their respective convictions to this Court as of right pursuant to Rule 3(b), Tenn.R.App.P. In this Court the appellants contend (1) the evidence contained in the record is insufficient to support their respective convictions, and the trial court erred in (2) denying their motion for judgment of acquittal as to count four, possession of the sawed-off shotgun, (3) denying their motion to suppress, (4) excluding the testimony of a witness, (5) interrupting the direct examination of a defense witness, questioning

the witness, and then commenting on the testimony of the witness, (6) permitting the assistant district attorney general to ask "phantom questions", and (7) the appellants challenge the length and terms of their respective sentences.

On July 10, 1985, the Governor's Task Force on Eradication of Marijuana was in Cocke County searching for marijuana plants in cultivation. Lieutenant Mike Dover, a helicopter pilot with the Department of Safety and a member of the Task Force, spotted three patches of marijuana plants in cultivation on land adjacent to Edward Black's residence. Dover directed members of the Task Force to the marijuana patches so that the plants could be destroyed. The officers gained access to the plants through Black's property. The only path leading to the three patches originated at the edge of Black's lawn.

Black was inside his residence when the Task Force officers arrived. When he went outside to investigate, he was confronted by one of the officers. The officer requested identification, which he furnished, advised him marijuana plants were found growing on the adjoining land, and read him the *Miranda* warnings. Black subsequently executed a consent to search form, which permitted the officers to search his residence and truck.

A search of the residence resulted in the seizure of three bags of marijuana from an attic over the carport and four bags of marijuana from the basement. A shotgun, which was described as being "sawed-off", and a photograph of marijuana plants in cultivation were seized from a room occupied by Jenkins. A total of $5,207.32 was seized from Black's wallet and truck.

Jenkins and Sandy Carroll, who also resided in the home, were arrested when they returned from a swimming outing.

Black and Jenkins both disclaimed any interest in the adjoining land where the marijuana plants were discovered, stated they were unaware marijuana plants were growing on the land, and denied any interest in the plants. They also disclaimed any interest in the marijuana found in the residence, and stated they were unaware of the presence of the marijuana. John Black, Edward Black's brother, testified he placed the marijuana in the attic and basement of his brother's in the places where the officers found the marijuana. John Black had previously discovered the marijuana in the trunk of an old car he had purchased, and decided to place the marijuana in his brother's residence to "scare him".

John Black's testimony was inconsistent with the facts introduced in evidence by the State. Black testified he placed two bags of marijuana in the attic over the carport. Three bags were found by officers. He stated the marijuana was "old leaves" and was brown in color. The vegetation found in the residence was green. When shown a photograph of the vegetation found in the attic, Black stated "that ain't like what I throwed up in there [the attic]." Black denied any interest in the plants found in cultivation on the land adjoining his brother's home.

This Court finds there is sufficient, indeed overwhelming, evidence contained in the record from which a rational trier of fact could conclude beyond a reasonable doubt that the appellants were guilty of possessing marijuana, a Schedule VI controlled substance, with intent to sell, Tenn. R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Jenkins admitted he owned the shotgun found under his bed. He had obtained the gun from a fellow employee. He was advised that the gun would not fire. However, his only interest was in obtaining the stock from the gun. The stock on Jenkins' shotgun was broken, and he wanted to replace the broken stock with the stock from the gun.

The officer who seized the weapon stated he would not attempt to fire the weapon unless it was a matter of life or death. A demonstration in the courtroom indicated the hammers would not cock while the gun was in a closed position. If the gun was breached or broken down, the hammers would cock, the triggers could be pulled to release the hammers, but the gun could not

be closed while the hammers were cocked. There was speculation by the officer that *if* the hammers were pulled back and then released, and *if* the point of the hammers would strike the firing pin, the gun might be fired. No evidence was introduced to show the length of the barrels or the gun.

A "Sawed-off shotgun" is defined as "a shotgun having a barrel or barrels of less than eighteen inches (18″) in length or a weapon made from a shotgun which as modified has an overall length of less than twenty-six inches (26″) or a barrel or barrels of less than eighteen inches (18″) in length." T.C.A. § 39–6–1712(7). It is not a crime to possess "a sawed-off shotgun, sawed-off rifle, or machine gun which is an unserviceable firearm." T.C.A. § 39–6–1714(6)

In ruling on the appellants' post trial motion for judgment of acquittal the trial judge said: "It would not surprise me at all had the jury found that it [the shotgun] was not serviceable, and therefore not an offense, and they [the jury] found it was serviceable, ... *we really and truly don't know if it was serviceable or not.*" [Emphasis added]

■ While there is a modicum of evidence that the shotgun was "sawed-off" and "serviceable", this evidence is not sufficient to support a conviction for possession of a sawed-off shotgun. *Jackson v. Virginia,* supra; *Davis v. State,* 577 S.W.2d 467 (Tenn.Crim.App.1979). A conviction for a criminal offense may not be based solely upon conjecture, guess, speculation, or a mere possibility. *Rucker v. State,* 174 Tenn. 569, 129 S.W.2d 208 (1939). And this Court cannot "speculate upon the guilt of one charged with the commission of a criminal offense." *Clancy v. State,* 521 S.W.2d 780, 781 (Tenn.1975). Therefore, Jenkins conviction for possession of a sawed-off shotgun is reversed and dismissed. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). *See State v. Johnson,* 692 S.W.2d 412 (Tenn.1985); *State v. Cabbage,* 571 S.W.2d 832 (Tenn. 1978).

The second issue raised, i.e. the denial of the post trial motion for judgment of acquittal, has been rendered moot by our reversal and dismissal of the conviction for possession of the sawed-off shotgun.

The third issue raised by the appellants concerns the trial court's denial of their pretrial motion to suppress the evidence seized at their residence.

While law enforcement officers were inspecting the marijuana plants discovered by Lt. Dover, the appellant Black was seen in his yard. Agent Shultz left the field and went to the Black residence. She advised Black marijuana plants had been found in the field adjacent to his home. After giving Black the *Miranda* warnings Agent Shultz questioned Black about the plants. A path had been discovered from the marijuana plants to the edge of Black's yard, and it was thought at the time that Black owned the adjacent field where the plants were discovered. Black was told he was under arrest for the cultivation of marijuana.

The number of law enforcement officers present at the Black residence varied. The officers were going to and from the field where the plants were discovered. All of the officers were armed, but their weapons were holstered at all times. Black was taken inside the residence by Agent Shultz. She didn't know if he was scared due to the number of officers present.

Agent Shultz asked Black if he would consent to a search of his residence. He was told that he did not have to consent to the search if he did not want to do so. If he agreed to consent to the search, Agent Shultz assured him they would not "tear up his house" while looking for marijuana. She further advised him only the two of them would be present while the search was being conducted. Black first refused to give his consent, but later he executed a written consent to search form, and he accompanied Agent Shultz as she conducted the search. He assisted her by opening drawers and raising beds.

Black testified he went to the door and was confronted by approximately fifteen

agents. They asked him to come outside, and he complied with their request. Black refused to consent to a search of his residence. All of the officers had dirt on their shoes. One of the officers advised him he would go get a warrant, and, when he returned, would "kick ... [his] doors off the hinges." Later, Black invited one of the officers into his home to use the telephone; and he assisted Agent Shultz in gaining access to the attic.

■ The trial court found Black freely and voluntarily consented to the search of his residence. This judgment has the weight of a jury verdict; *State v. Yarbro*, 618 S.W.2d 521, 524 (Tenn.Crim.App.1981); and it is conclusive on appeal unless this Court finds that the evidence preponderates against this judgment. *State v. Turnbill*, 640 S.W.2d 40 (Tenn.Crim.App.1982). In the case *sub judice* the evidence does not preponderate against the finding of the trial court. The evidence clearly shows Black freely and voluntarily consented to the search of his residence and motor vehicle.

The fourth issue raised by the appellants concerns the exclusion of testimony relating to activity in the marijuana patches after the arrest of the appellants. The trial judge on his own motion excluded the testimony because the testimony was not material to the issues before the court. This issue is moot. The appellants were acquitted of the manufacturing count. This is the only count to which this testimony would have been relevant.

■ The fifth issue raised by the appellants concerns the trial court's questioning of the defense witness, John Black, and the comments made by the trial court about Black's testimony. The appellants have waived the issue as it relates to the questions propounded to the witness by the trial judge. Tenn.R.App.P. 36(a). The appellant failed to make a contemporaneous objection, move for a mistrial, or otherwise complain. However, considering this portion of the issue on the merits, we find the questions propounded did not prejudice the appellants. *See Pique v. State*, 480 S.W.2d 546, 550–551 (Tenn.Crim.App.1971). The

trial judge simply asked pointed questions concerning facts which would have been elicited by counsel's direct examination of the witness. It was the appellants' theory of defense that John Black had placed the marijuana, which was subsequently discovered by the officers, in the attic and basement of their home without their knowledge. The questions asked by the trial judge concerned placing the marijuana in the home of the appellants. The trial judge also asked the witness if the marijuana plants found growing on the land adjacent to the appellants' home were his. He denied growing the marijuana.

In the future the trial judge should permit counsel to examine his witnesses and otherwise try his case. *See Collins v. State*, 220 Tenn. 275, 416 S.W.2d 766 (1966); *Parker v. State*, 132 Tenn. 327, 178 S.W. 438 (1915); *Pique v. State*, supra. In *Parker* our Supreme Court said questions by a trial judge should be limited to "clearing up points that seem obscure, and supplying omissions, which the interests of justice demand." Here an experienced trial lawyer was just commencing the examination of the witness when the trial judge abruptly interrupted and began asking questions concerning information which counsel was attempting to elicit.

■ Defense counsel objected to law enforcement officers, who had testified at the trial, from constantly entering the courtroom and conversing with the assistant district attorney general prosecuting the appellants. At a bench conference the assistant district attorney general advised defense counsel and the trial judge that the discussions concerned whether John Black should be arrested by the officers. Later, defense counsel called one of the officers testifying for the State as a witness for the appellants. Counsel inquired of the witness if the officers had contemplated arresting John Black, and the witness said they had; and they had entered the courtroom to discuss this with the assistant district attorney general. On cross-examination the witness stated the assistant district attorney general had advised them not to arrest John Black. Immediately following

this response the trial judge gave the following limiting instruction to the jury:

"*THE COURT:* Ladies and gentlemen, while this is out before you, I don't know that it has any probative value in this case. This man did, if you believe his testimony, confess to what would amount to the crime of possession of marihuana. It might be a felony or it might be a misdemeanor. If he lied to you he committed perjury, which is grounds for arrest. It's proper to discuss his arrest, I'm confident it will be discussed, investigated, but that's got nothing to do with this case. You will look ... Whether he's arrested or whether he's not arrested does not shed any light on his credibility. You saw him, you listened to him, you saw him cross-examined, direct examination, you heard other proof. You judge what value you give his testimony. Don't speculate on whether or not he's going to be arrested and prosecuted, because that doesn't have anything to do with this right now. You may come down."

The trial judge should have refrained from alluding to the issue of perjury. The instruction should have been limited to the arrest of the witness based on the incriminating statements made by the witness from the witness stand. However, this statement when taken in the context of the entire instruction given by the trial judge was not prejudicial to the appellants. If the statement constituted error, it was harmless beyond a reasonable doubt. See *Wallis v. State,* 546 S.W.2d 244, 248–249 (Tenn.Crim.App.1976)

■ The sixth issue raised by the appellants concerns the asking of "phantom questions" by the assistant district attorney general who prosecuted the appellants. In his brief Jenkins states this issue only concerns questions relating to a "joint of marijuana" and a "water jug", which were allegedly found by officers in his bedroom. This issue has been waived because the appellant "failed to take whatever action was reasonably available to prevent or nullify the harmful effect", if any, of the error. Tenn.R.App.P. 36(a). The appellant did not make a contemperaneous objection, move to strike the questions and answers, or otherwise complain about the questions during the course of the trial.

The seventh issue raised by the appellants concerns the length and terms of the sentences imposed by the trial court. This issue requires a de novo review of the appellants' sentences "without a presumption that the determination made by the court from which the appeal is taken are correct." T.C.A. § 40–35–402(d).

In conducting the de novo review mandated by the Tennessee Criminal Sentencing Reform Act of 1982, as amended, this Court must consider (a) any evidence received at the trial and sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the appellants in their own behalf, and (h) the appellants' potential or lack of potential for rehabilitation or treatment. See T.C.A. §§ 40–35–103 and 210.

No evidence was offered at the sentencing hearing. Both appellants made statements and requested probation of their respective sentences. When asked about the State's position on sentencing, the assistant district attorney general told the court "we would object to straight probation, and leave all matters to the Court."

Edward Black was 48 years of age when he was arrested. His education is limited. He completed the sixth grade. Since 1964 Black has been employed by the same company. Prior to obtaining this employment he was a farmer. Black has no prior criminal record, and he enjoys an excellent reputation in his community. His neighbors and members of the community consider Black to be "an honest and conscientious individual". The probation officer also considers Black "to be a good candidate for probation based on his stable employment record and the absence of any criminal record." The trial court found Mr. Black "has been a good citizen, has worked a

long time. He's got some tings [sic] to be said for him."

Jenkins was nineteen years of age when he was arrested. He completed the eleventh grade before leaving school to seek employment. He later received his GED. Jenkins has been employed since November of 1981 as a cook, cashier, dishwasher, and is presently a doffer with a textile mill. He has no prior criminal record, and enjoys an excellent reputation in his community. His neighbors consider him "a hard working young man who has been known to cause no trouble." The probation officer preparing the presentence report concluded Jenkins "appears to be a good candidate for probation."

There are mitigating factors present which are applicable to both Black and Jenkins. The appellants' criminal conduct neither caused nor threatened serious bodily injury, T.C.A. § 40–35–110(1). The appellants did not contemplate that their criminal conduct would cause or threaten serious bodily injury. T.C.A. § 40–35–110(2). Also, the appellants do not have a prior history of arrest or conviction for criminal offense. T.C.A. § 40–35–110(13). There are no enhancement factors present on the face of the record.

The first sentencing issue which must be addressed is the length of the sentences imposed by the trial court. At the sentencing hearing the trial judge stated: "The only real difference is their age. The court perceives no real difference between the two of them." Later, when addressing Jenkins, the trial judge observed: "I don't know whether your daddy was the leader, I think he was." However, when sentencing the appellants, the trial court sentenced Black to serve a term of three years in the Department of Corrections and sentenced Jenkins to serve a term of one year in the Department of Corrections with the actual place of confinement being the Cocke County Jail.

■ The imposition of a three (3) year sentence for Black and a one (1) year sentence for Jenkins based upon the facts in evidence cannot be justified. One of the express purposes of the Tennessee Criminal Sentencing Reform Act of 1982 is to "[a]ssure the fair and consistent treatment of all defendants by eliminating unjustified disparity in sentences." T.C.A. § 40–35–102(2). Since there is no justification for the disparity in the sentences imposed by the trial court, the disparity should be eliminated.

It is the opinion of this Court that the length of Black's sentence should be reduced from three (3) years to one (1) year to conform to Jenkins' sentence. See T.C.A. § 40–35–402(c)(2) While the offense is a felony, and subject to be served in the Department of Corrections, the actual place of Black's confinement, like the sentence of Jenkins, will be served in the Cocke County Jail rather than the Department of Corrections as originally ordered by the trial court. See T.C.A. § 40–35–311(a). This modification of Black's sentence eliminates the disparity that originally existed and will assure fair and consistent treatment of the appellants in conformity with the purposes of the Act. T.C.A. § 40–35–102(2). Both Black and Jenkins Shall be immediately eligible for work release, furlough, trustee status, and related rehabilitative programs. T.C.A. § 40–35–311(b)(1).

The trial judge did not state his reasons for refusing to suspend the appellants' sentences and placing the appellants on probation. It appears from the comments made by the trial court at the sentencing hearing that probation was denied because (a) the appellants were untruthful in their trial testimony and (b) the deterrent effect the denial of probation might have upon the citizens of Cocke County. Either of these grounds is sufficient to deny the appellants probation.

During the course of the sentencing hearing the trial court observed: "We've got chronic problems in Cocke County. Got all the advertizing [sic] across the State, this is the marijuana capital [sic] of the world. *I don't believe that.* I know we're under surveillance more than any other county. That if anything is found, it's always in the newspaper. *We've got a lot of advertizing [sic], but it is a problem*

*all over....* " [Emphasis added] From this we gather that trafficking in marijuana is no more a problem in Cocke County than it is in any other county of this State. However, there are no facts in the record which support the statement made by the trial court.

■ We do not think that the trial court was justified in denying the appellants probation on this ground.

Before a trial court may deny probation on the ground of deterrence, there must be some evidence in the record "that the sentence imposed will have a deterrent effect within the jurisdiction." *State v. Horne,* 612 S.W.2d 186, 187 (Tenn.Crim.App.1980); *State v. Vance,* 626 S.W.2d 287, 290 (Tenn. Crim.App.1981). In addition, the Tennessee Criminal Sentencing Reform Act of 1982 requires that any sentence imposed by a court must be based on evidence contained in the record of the trial and sentencing hearing or the presentence report. T.C.A. § 40–35–210(d). This rule is reasonable. If marijuana trafficking was a particular problem in Cocke County, the State could have presented a law enforcement officer to relate this fact. *See State v. McColgan,* 631 S.W.2d 151, 156 (Tenn. Crim.App.1982), [local sheriff testified "his county had a real problem with drug traffic and traffic in stolen property and that requiring the appellant to serve his sentence would deter others from criminal activity"], and *State v. White,* 649 S.W.2d 598 (Tenn. Crim.App.1982), [local sheriff testified that "the defendant's incarceration would deter like crimes and made reference to the numerous worthless check violations that occurred in Lincoln County"]. If trial judges were permitted to assume facts not in the record or base a sentence imposed on extraneous facts, it would be impossible for this Court to review sentencing issues.

In addition to the absence of evidence in the record, this Court is of the opinion the denial of probation is not necessary to deter the appellants. The presentence report indicates the appellants have lived honest lives and maintained constant employment; and their involvement in marijuana trafficking is a recent venture. Their arrest and conviction will deter them. The trial court is apparently of the opinion that trafficking in marijuana is not a particular problem in Cocke County. Thus, the denial of probation in this instance is not necessary to deter the conduct of others in the community. *See State v. Michael,* 629 S.W.2d 13, 14–15 (Tenn.1982)

During the sentencing hearing the trial judge stated: "The jury ... did not believe Mr. [Edward] Black at all, did not believe a thing he said. They found him guilty. There were contradictions in the testimony. It was unreasonable testimony on it.... [T]he testimony about the stock on the gun, and so forth was incredible. The jury didn't believe that. The jury found that you lied to them. That both of you lied. That's why they returned this ... they had to find that, and did find that. There was abundant justification for the jury in making that finding." In addition, the testimony of the appellants' key witness, John Black, was also incredible. His testimony was impeached in many respects; and it was unbelievable.

■ An accused's truthfulness at trial or a sentencing hearing is a permissible factor for a court to consider when determining the issue of probation. *See State v. Neeley,* 678 S.W.2d 48, 49 (Tenn.1984); *State v. Bunch,* 646 S.W.2d 158 (Tenn. 1983); *State v. Lewis,* 641 S.W.2d 517 (Tenn.Crim.App.1982); *State v. Morton,* 639 S.W.2d 666, 669 (Tenn.Crim.App.1982). In the case sub judice the appellants should be denied probation on this ground. *See State v. Bunch,* supra; *State v. Bowden,* 656 S.W.2d 58, 59 (Tenn.Crim.App.1983); *State v. Poe,* 614 S.W.2d 403, 404 (Tenn. Crim.App.1981).

Jenkins' conviction for the offense of possessing a sawed-off shotgun is reversed and dismissed. The appellants' convictions for the offense of possessing marijuana with intent to sell is affirmed. The sentence of Black is modified and reduced to a term of one (1) year in the Department of Corrections with the actual place of confinement being the Cocke County Jail. Both Black and Jenkins shall be immediately eligible for work release, furlough, trust-

ee status, and related rehabilitative programs.   T.C.A. § 40–35–311(b)(1).

BYERS and CORNELIUS, JJ., concur.

BYERS, Judge, concurring.

I concur with my colleagues in affirming the drug convictions and in dismissing the charge of going armed.  I further concur with them in the sentence fixed for the defendant Edward Black.  I do not, however, subscribe to the statements in the majority opinion dealing with the level of evidence required to show a deterrence factor in passing on probation.

My colleagues read *State v. Horne*, 612 S.W.2d 186 (Tenn.Cr.App.1980), and *State v. Vance*, 626 S.W.2d 287 (Tenn.Cr.App. 1981), to require testimonial evidence of the fact that a particular crime is significant enough to require a denial of probation on the basis of deterrence.  I do not believe either decision makes such testimony essential for such a finding.  Although this kind of evidence would go a long way in supporting the finding of a trial judge, to make it essential would prohibit the application of judicial notice, by the trial court and this Court, of facts which are known by reason of the presence of multiple cases of a particular kind on the docket of the courts.  I would not, therefore, read *Horne* and *Vance* so restrictively.

Neither do I concur with the suggestion that T.C.A. § 40–35–102(2) gives weight to comparative sentences between particular defendants.  Absolute parity in sentencing is not required by the general purposes of the Sentencing Reform Act.  *See State v. Leonard Moss*, 727 S.W.2d 229 at Section 11.A.  (Tenn., Knoxville, 1986).