IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 24, 2004

## STATE OF TENNESSEE v. DANNY WILLIAMSON

**Appeal from the Criminal Court for Cocke County**
**No. 8967     Ben W. Hooper, II, Judge**

---

**No. E2003-01856-CCA-R3-CD**
**June 18, 2004**

---

The defendant, Danny Williamson, pled guilty in the Cocke County Criminal Court to possession of a Schedule VI controlled substance with intent to sell, a Class D felony. Pursuant to the plea agreement, the defendant received a two-year sentence as a Range I, standard offender with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court held that the need for deterrence warranted the defendant's serving his entire sentence in confinement. The defendant appeals, claiming that the trial court erred by denying his request for full probation. We affirm the defendant's sentence but remand the case for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed, Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Susanna L. Thomas, Newport, Tennessee, for the appellant, Danny Williamson.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James Bruce Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to drug task force agents searching the defendant's home on August 5, 2002, and finding marijuana. At the guilty plea hearing, the state gave the following factual account of the crime: Agents from the Fourth Judicial District Drug Task Force went to the defendant's home in order to execute a search warrant. The defendant was not there when the agents arrived but returned home thirty minutes later. Detective Maurice Shults asked the defendant to open a storage building. Inside, the agents found about sixteen pounds of marijuana under a blanket. The agents found more marijuana in the defendant's garage. They sent the marijuana to the Tennessee Bureau of Investigation (TBI), which determined that the marijuana weighed 21.1 pounds.

At the defendant's sentencing hearing, Detective Shults testified that he began investigating the defendant in July or August 2002 and executed a search warrant on the defendant's home on August 5, 2002. He said drug task force agents found a small amount of marijuana in a Chevrolet Blazer, about one pound of marijuana in a utility building, and about seventeen pounds of marijuana in a small storage building. He said agents also found sets of scales and $777 in the defendant's trailer. Upon being questioned by the trial court, Detective Shults testified that an informant made at least two controlled buys from the defendant's home. He said the informant was wearing a transmitter and bought the marijuana with marked money. He said that the street value of the marijuana was about $950 per pound and that the amount of marijuana recovered generally was associated with distribution.

On cross-examination, Detective Shults testified that he listened to the informant make the controlled buys and that he recognized the defendant's voice. He said the controlled buys were not audiotaped, and he acknowledged that the agents did not find any of the marked money in the defendant's home.

The defendant testified that he was forty-six-years-old, that his parents separated when he was about five years old, and that he lived in many foster homes. He said that he worked at River Terrace in Gatlinburg for twelve years and that he currently worked at Bells Nursery and a campground. He said he had always worked and had never been in trouble before. He said that in 2002, he broke his arm, could not work for about eight months, and agreed to hold the marijuana for a man. He said that he borrowed $900 from his sister and that the agents found some of the borrowed money in his home. He said that his son and his son's girlfriend lived with him and that he took care of his seventy-three-year-old father. He said that his father had cancer and could not drive and that he took his father to doctor's appointments. He said that if the trial court sentenced him to probation, he would not be involved with marijuana again, would work, and would take care of his family.

On cross-examination, the defendant testified that he was supposed to keep the marijuana only for a couple of weeks, that the man paid him $600 for "fronting" the marijuana, and that the man never returned to pick up the drugs. He said that he never sold any of the marijuana but that he smoked some of it. He said he could not pass a drug test.

According to the defendant's presentence report, the defendant dropped out of school after completing the eighth grade and did not obtain his GED. He described his physical and mental health as fair and stated that he did not use or abuse illegal drugs. He said that although he used to drink alcohol, he had not used alcohol for seventeen years. The report showed that the defendant worked for Bells Nursery and used to work for R.V. Wash and Wax.

The trial court determined that the defendant had been selling marijuana from the defendant's home. It noted that the defendant was entitled to a presumption that he was a suitable candidate for alternative sentencing but that the defendant was not entitled to probation because of the large

amount of marijuana recovered. In addition, the trial court ruled that the need for deterrence warranted the defendant's serving his entire sentence in confinement, stating that

> when I watch the devastation caused by all the tornados and what not that we had in this state, let's say around Morgan County, that that devastation somewhat kind of pales in comparison to the devastation that's caused by illegal substances, the abuse of those substances, in this county.
>
> All I have to do is look at my Docket Book, sometimes look over here in the jury box or out in the audience. I can look out in the audience and see it.
>
> This county is depressed economically. I don't know that we're any worse than anyone else, but if we are all I can say is that there's a lot of sad people in a lot of places.
>
> So, Mr. Williamson, the Court is satisfied that any presumption for probation has been overcome. That there are problems in this county that demand people that engage in this type of activity must be punished, so I impose the two year sentence. That will be built in the county jail . . . .

The defendant contends that the trial court erred by denying his request for full probation based upon the need for deterrence. He argues that "the record in his case is devoid of any evidence supporting either the need for deterrence in a particular jurisdiction or that his incarceration will serve as a deterrent to others." The state claims that given the trial court's determination that drugs were having a devastating effect on the county and that the defendant was selling marijuana from his home, the trial court properly ruled pursuant to State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), that the need for deterrence justified the defendant's serving his entire sentence in confinement. We hold that the defendant should serve his two-year sentence in incarceration.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of

criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

With regard to a sentence of confinement based upon the need for deterrence, our supreme court has held that

> the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

Hooper, 29 S.W.3d at 10. In this respect, the court suggested five non-exclusive factors that reveal "whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal:"

> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
>
> . . . .
>
> 2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
>
>  . . . .

3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.

. . . .

4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.

. . . .

5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12 (emphasis omitted). The court noted that these factors were meant as a guide and need not all be present before incarceration is deemed appropriate. Id. at 12.

Although a judge may judicially notice some facts establishing a need for deterrence, the trial court's extrajudicial observations are not the proper basis for sentencing. Id. at 13; see T.C.A. § 40-35-210(g) and Sentencing Commission Comments. "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b). On the other hand, "a court may not consider facts outside the record that are within the judge's personal knowledge under the guise of taking judicial notice." State v. Nunley, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999).

In the present case, the trial court's observations are not generally known within Cocke County and are not readily determined from some unquestionably accurate source. Moreover, even if the trial court had relied solely upon his observations from the bench, general statements that drugs are a problem in a particular county "cannot serve as a substitute for factual findings containing comparisons to indicate increased drug use" in the county, requiring a need for deterrence. State v. Fields, 40 S.W.3d 435, 442 (Tenn. 2001). We agree with the defendant that the record contains no evidence of a particular need to deter the sell of marijuana in the community, jurisdiction, or state as a whole.

In our de novo review, we observe that the only other factor from Hooper which supports a need for deterrence is factor two, that the defendant's crime was motivated by a desire to profit or gain from the criminal behavior. However, we believe this factor alone is insufficient to support the need for deterrence and the particular suitability of full incarceration in achieving that goal. Nevertheless, we conclude that the defendant should serve his entire sentence in confinement. The defendant acknowledged smoking some of the marijuana and stated at the sentencing hearing that

he could not pass a drug test. This supports the application of enhancement factor (2), that the defendant has a history of criminal behavior in addition to those necessary to establish the appropriate range. See T.C.A. § 40-35-114(2). Also, the fact that the defendant smoked the marijuana and could not pass a drug test, yet failed to seek any treatment for his drug use, shows that he is not a suitable candidate for rehabilitation. Finally, the trial court did not believe the defendant's claim that he was not selling the marijuana, and a lack of candor may be a factor for denying probation. See State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987).

Based upon the foregoing and the record as a whole, we affirm the sentence imposed by the trial court. We note that the plea agreement form and the plea hearing transcript reflect that the defendant pled guilty to Class D felony possession of a Schedule VI controlled substance. However, the judgment form shows that he pled guilty to a Class E felony. We believe the trial court made a clerical error on the judgment form and remand the case for entry of a corrected judgment to reflect that the defendant pled guilty to Class D felony possession of a Schedule VI controlled substance with intent to sell.

 

_____
JOSEPH M. TIPTON, JUDGE