# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs November 20, 2013

## STATE OF TENNESSEE v. CHARLES CLEVENGER

**Appeal from the Criminal Court for Knox County**
**No. 94791     Jon Kerry Blackwood, Judge**

---

**No. E2013-00770-CCA-R3-CD - Filed January 13, 2014**

---

The defendant, Charles Clevenger, appeals from his Knox County Criminal Court jury conviction of aggravated robbery, claiming that the evidence was insufficient to support his conviction, that the trial court erred by ruling that the State would be permitted to utilize his prior convictions to impeach his testimony, that the testimony of a State witness violated the Confrontation Clause, and that the trial court erred by ordering the 30-year sentence imposed in this case to be served consecutively to the 30-year sentence imposed in an unrelated case. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Bruce Poston, Knoxville, Tennessee, for the appellant, Charles Clevenger.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall E. Nichols, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to the February 17, 2010 robbery of the Walgreen's on Oak Ridge Highway. At trial, Michael Aaron Bell testified that he went to the Walgreen's to purchase medication, and as he knelt down in the aisle to examine the medications, "a gentleman walked behind [him] with a mask over his face, and kind of startled" him. Mr. Bell selected his medication and went to the front of the store to pay, and, while there, he "asked the cashiers if they had noticed the gentleman with a mask over his

head. And they said that they had." When Mr. Bell and the cashiers "kind of figured out that the place was getting robbed," he and another person walked to an aisle to get a better view of the pharmacy area. At that point, "one of the managers ducked into the office," and Mr. Bell "ran around to the other aisle" to warn another customer about the robbery. When the man with the mask passed by Mr. Bell, Mr. Bell "crept up behind [him] and followed [him] into the parking lot and started taking pictures." He noticed that the masked man was carrying a "[b]ag of drugs." Mr. Bell saw the man get into a "gold, tan, gray" 1990s era Buick LeSabre "and put everything in the passenger seat" before taking off his mask and putting on a pair of black-framed bifocal glasses. The man then started the car and drove away.

Mr. Bell identified the photographs he took outside the Walgreen's on February 17, 2010. Mr. Bell testified that he identified the defendant from a photographic lineup on March 8, 2010. He also identified the defendant at trial and noted that the defendant appeared "more clean cut" and that the defendant wore glasses different from those he wore on the night of the offense.

During cross-examination, Mr. Bell acknowledged that he did not see the defendant in possession of any weapon. He admitted that he initially described the perpetrator as "six-foot tall, about 240 with a gut, 40 to 45 years old." After being shown the photograph of an individual that he agreed looked similar to the defendant, Mr. Bell said that he did not believe that individual committed the robbery.

Lina Robinson testified that she was working the evening shift at the Walgreen's on Oak Ridge Highway on February 17, 2010, as the pharmacist and pharmacy manager. At approximately 9:00 p.m., a man wearing "pantyhose over his face" handed her a note that said, "[G]ive me all your Oxycodone." She said that she "just went and . . . got some drugs" and, as she tried to hand them to the man, he asked for a bag. She put the drugs into a bag, and the man asked if she had included any Valium. She replied that she had not, then went and got some Valium and put it into the bag. She then put the note into the bag and handed the bag to the man. When the man asked if she had put any money in the bag, she "yelled and . . . said, no, I don't have any money." At that point, the man looked into the bag, shook its contents, and then walked away. She said that in addition to the pantyhose, the man wore clear vinyl gloves.

Ms. Robinson said that the man, who "was kind of thick through the middle," had his hands in his pockets and that, as she set about gathering the drugs, he told her to hurry because "it was going to go off." She said that he repeated this statement. Ms. Robinson testified that the defendant's statement coupled with his keeping his hands in his pockets led her to believe that "[h]e either had a bomb strapped through to him or he had a

gun in his hand in his pocket." She said that she was scared throughout the transaction but tried to remain calm.

Ms. Robinson testified that she initially believed that she would be unable to identify the defendant because of the pantyhose and because she was so upset over the encounter. She said, however, that she recognized the defendant immediately when he was brought in with other prisoners for the preliminary hearing in this case. She identified the defendant at trial but noted that the defendant appeared to have lost weight and that he appeared more "clean shaven."

Ms. Robinson identified notebook paper that appeared to be the same as paper that the defendant used when drafting his demand note, and she also identified vinyl gloves and a stocking cap that appeared to be the ones worn by the defendant during the offense.

During cross-examination, Ms. Robinson admitted that she described the perpetrator as having sandy-colored hair but explained that the "tan colored hose" made the defendant's hair appear lighter. She acknowledged that she did not see the defendant with a weapon and that he did not display to her any article that led her to believe it was a weapon.

Walgreen's cashier Charles Jerry Brentz testified that on February 17, 2010, he saw the defendant come into the store wearing a stocking cap on his head and walk to the back of the store. Mr. Brentz said that after Mr. Bell told him that the defendant had pulled the stocking cap over his face, Mr. Brentz and Mr. Bell "walked right up behind him, taking pictures." He said that they followed the defendant out of the store, and the defendant "got into his car and took off." Mr. Brentz, who had identified the defendant from a photographic array on March 8, 2010, also identified the defendant in court but noted that the defendant appeared "more clean cut" in court than he did on the night of the robbery.

During cross-examination, Mr. Brentz acknowledged that he described the perpetrator as being approximately six feet one inch tall and weighing 240 pounds. He said that he saw the defendant put on glasses that appeared "gold with the light."

Knoxville Police Department ("KPD") evidence technician Beth Goodman testified that she responded to a car accident on March 5, 2010, involving the defendant and his gold-colored Buick Century. Inside the defendant's car, Ms. Goodman discovered notebook paper, a stocking cap, and latex gloves.

Knox County Sheriff's Office ("KCSO") Detective Krystal Gibson testified that she investigated the robbery of the Walgreen's on February 17, 2010. During her investigation, she learned that items used during the robbery were located in the defendant's

car following the March 5, 2010 car accident and that the jacket and shoes worn by the defendant when interviewed following the accident matched the description of those worn by the robbery perpetrator. Based on this information, she created a photographic lineup containing the defendant's photograph to show to witnesses.

During her investigation, she learned through her perusal of various law enforcement databases that an individual named Steven Cannon owned a vehicle that matched the description provided by witnesses. No other evidence, however, suggested that he perpetrated the robbery. She acknowledged during cross-examination that she did not include Mr. Cannon's photograph in the array displayed to witnesses. Detective Gibson said that during her investigation, another person provided a possible license tag number for the getaway vehicle: "953 Victor Baker John or 963 Victor Baker John." The license tag number for the defendant's Buick Century was "953 Victor Baker John."

Following this testimony, the State rested. The defendant chose not to testify, and he did not offer any proof. Based upon the foregoing proof, the jury convicted the defendant as charged of aggravated robbery.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, the defendant challenges the sufficiency of the convicting evidence, the admission of certain evidence, the trial court's ruling on the use of his prior convictions as impeachment evidence, and the propriety of the alignment to the sentence in this case with the sentence imposed in an unrelated case. We consider each claim in turn.

*I. Sufficiency*

The defendant contends that the evidence was insufficient to support his conviction because the State failed to establish his identity as the perpetrator and failed to establish that he displayed any article that led the victim to believe that he was armed with a deadly weapon. The State asserts that the evidence was sufficient to support the conviction.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[a]ggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1) (2006). Robbery, as charged in this case, "is the intentional or knowing theft of property from the person of another by violence." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a).

### *A. Identity*

The defendant claims that the State failed to establish his identity as the perpetrator of the robbery because "two witnesses at trial identified the picture of a different man as the robber."

We need not tarry long over the defendant's claim because it is based upon a misrepresentation of the events at trial. At trial, defense counsel displayed to Mr. Brentz and Mr. Bell the photograph of Mr. Cannon and asked if the man in the photograph appeared to be the same one that robbed the Walgreen's. Although both men agreed, after much cajoling, that the man in the photograph was similar in appearance to the robber, neither man identified Mr. Cannon as the man who robbed the Walgreen's. Instead, both men, who had identified the defendant from a photographic array on March 8, 2010, clearly identified the defendant as the perpetrator in court. Moreover, other evidence established that the defendant drove a gold-colored Buick, as did the robber, and that officers discovered gloves and a stocking cap that matched those worn by the perpetrator in the defendant's car on March 5, 2010. This evidence established the defendant's identity as the perpetrator.

### *B. Display of Any Articles Used or Fashioned to Lead the Victim to Reasonably Believe It to Be a Deadly Weapon*

The aggravated robbery statute clearly contemplates the scenario in which a

robbery is accomplished not by the brandishing of an actual deadly weapon but by some action on the part of the defendant to lead the victim to reasonably believe that the defendant is armed with a deadly weapon. This court has affirmed convictions of aggravated robbery when the defendant's demand for money coupled with his maintaining a hand in his pocket, even when the hand was not positioned to evoke the image of a gun or any other weapon, led the victim to reasonably believe the defendant was armed, often by verbally threatening to harm the victim. *See, e.g.*, *State v. Aaron Cooper*, No. 01C01-9708-CR-00368, slip op. at 7 (Tenn. Crim. App., Nashville, Sept. 29, 1998) (defendant "held his hand in the waistband of his pants 'as if he had a weapon,' and said . . . 'Don't make me have to hurt you'"); *State v. Frederick Corlew*, No. M2001-00842-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, Nov. 1, 2002) (defendant kept "his right hand . . . in his right pants pocket as he came in and [it] remained there as he walked past the cash register and even after he came around the counter and was standing with the victim, demanding her to 'open the register'"). We have observed that the "common threads" in those cases where no actual deadly weapon was displayed "are: 1) a hand concealed in an article of clothing; and 2) a threat – express or implied – that caused the victim to 'reasonably believe' the offender had a deadly weapon and was not opposed to using it." *State v. Monoleto D. Green*, No. M2003-02774-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, May 5, 2005).

In this case, the evidence established that the defendant kept his hands in his pockets, that his jacket appeared "thicker in the middle," and that he twice warned Ms. Robinson to hurry or "it was going to go off." In our view, this evidence was sufficient to support the jury's finding that the defendant displayed an article in a manner fashioned to lead Ms. Robinson to reasonably believe that he possessed a deadly weapon.

## II. Rule 609

The defendant next contends that the trial court erred by ruling that the State would be permitted to impeach the defendant's testimony with his 2005 conviction of aggravated robbery and his 1983 conviction of burglary. He claims that the trial court's erroneous ruling prevented him from exercising his right to testify at trial. The State alleges that although the defendant moved the court prior to trial to exclude the defendant's prior convictions for impeachment purposes, the defendant did not ask that the motion be heard prior to the trial and made no mention of the issue until after the defendant had indicated that he would not testify and after the conclusion of the *Momon* colloquy. Therefore, the State asserts, the defendant failed to preserve the issue for appellate review.

We agree with the State that the defendant has failed to preserve this issue. The defendant filed a pretrial motion to prohibit the State from using any of the seven convictions listed in its Rule 609 notice to impeach his testimony should he decide to testify

at trial. The trial court did not rule on the motion prior to trial, however, and the defendant did not ask for a ruling before announcing his decision not to testify. Following the *Momon* colloquy, defense counsel stated, "I assume that my Motion in Limine was that the Court's ruling would have been the same as it did in the last trial, with the addition of adding number 8, as that would impact my decision . . . ." The court responded, "Well, actually, I would have ruled that the . . . two thefts [and] third-degree burglary would have been admissible cause they reflect a dishonesty . . . ." Given the timing and nature of the defendant's inquiry, we are constrained to conclude that he failed to preserve the issue. Accordingly, the issue has been waived.

### III. Confrontation Clause

The defendant also asserts that the trial court erred by permitting Detective Gibson to recite the license tag number relayed to the officer by a witness on the scene in violation of the defendant's right to confront the witnesses against him. Again, the State contends that the defendant waived review of this issue by failing to lodge a contemporaneous objection and by failing to raise the issue in his motion for new trial.

Although the defendant objected to the challenged testimony on grounds that it was hearsay, he did not contend that the statement violated the Confrontation Clause. The failure to lodge a contemporaneous Confrontation Clause challenge results in a waiver of the issue. See Tenn. R. Evid. 103; Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); *State v. Rhoden*, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). The defendant also waived our consideration of his Confrontation Clause challenge by failing to raise the issue in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . [any] ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial but were not raised in the motion); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The defendant's written motion for new trial contained no challenge to this testimony, and, although he claimed at the hearing on his motion that the admission of the testimony was error, he did not claim error of constitutional magnitude. This issue is waived.

*IV. Sentencing*

Finally, the defendant contends that the trial court erred by ordering that he serve the 30-year sentence imposed in this case consecutively to the 30-year sentence imposed for a prior robbery conviction, arguing that the effective 60-year term, which must be served at 100 percent by operation of law, is not the least severe measure necessary to achieve the purposes of the sentencing act. The State avers that the defendant has waived our consideration of this issue and, alternatively, that the alignment of the sentences was appropriate.

At the May 1, 2012 sentencing hearing, the defendant waived his right to present proof at the sentencing hearing and agreed to permit the court to utilize the presentence report that was prepared in a previous case. That report, however, was not exhibited to the hearing, and the defendant did not ensure that the report was made a part of the record on appeal. The appellant bears the burden of preparing an adequate record on appeal. *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). If the appellant fails to file an adequate record, this court must presume the trial court's rulings were correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Without the presentence report relied on by the trial court, we cannot evaluate the defendant's claim and must, instead, presume that the trial court ruled correctly.

*V. Conclusion*

Because the record shows no reversible error, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE