**STATE of Tennessee, Appellee,**

v.

**Morris RUCKER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 6, 1986.

Permission to Appeal Denied by Supreme Court June 2, 1986.

George J. Duzane, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Mary Hausman, Atty. Gen., Cheryl Blackburn, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

SCOTT, Judge.

The appellant was convicted of assault with intent to commit murder in the first degree with bodily injury, robbery accomplished with the use of a deadly weapon and a second count of assault with intent to commit murder in the first degree, but without bodily injury. He received a life sentence for the assault with injury, forty years for the armed robbery and twenty years for the second assault. All sentences are to be served consecutively. Much aggrieved by the conviction, the appellant has presented six issues on appeal. Taken together, four of the issues challenge the sufficiency of the convicting evidence.

On the morning of September 15, 1983, Marion Flowers was employed as the night clerk at the Chateau Motor Inn in Nashville. The motel consisted of a number of trailers that were placed together and the office was also located in a trailer. The front door was covered with a protective grille which could be raised or lowered. Individuals wishing to rent a room presented themselves at the door and the grille was raised to allow the registration forms and the money to be passed between the clerk and the patron.

At approximately 5:30 A.M., Ms. Flowers heard something hit the side of the trailer. Thinking it had been hit by a car, she looked out the window and started to go out the door. She saw a black man wearing a dark jacket and a stocking cap. He inquired about renting a room for a week and she quoted the rate. He left. A short time later one of the windows was broken and the same man stuck his head and hand through the window. In his hand was a pistol. He directed Ms. Flowers not to move and she complied. The man then entered the office through the window and took the cash from the cash register. He also ordered Ms. Flowers to lie down on the floor. He took her purse and finally, as he stood over her, he shot her in the head.

Miraculously, when the bullet hit the bone in her head it fractured into numerous pieces and while she was badly injured, she lived. In fact, after being shot, Ms. Flowers was able to summon the assistant manager who lived nearby and also the police.

Thomas A. Cole, a Metropolitan Police Officer, heard the police broadcast concerning the armed robbery and proceeded west on Interstate 40 toward the motel. Beside the interstate he saw a black male and female walking. The man was carrying something under his right arm and the woman was walking twenty-five to thirty feet behind him. As the officer passed the man, his attention was attracted to him and he looked carefully at him. He braked and began backing up his squad car. The man then fled down a hillside toward the interstate fence. He also turned and fired a shot at the officer, and Mr. Cole responded by returning fire. The man then climbed the interstate fence and the officer followed. He fired two more shots at Mr. Cole, but the officer lost sight of the man in the darkness.

Mr. Cole called for assistance and other officers responded, including a canine officer and his dog, Starsky. Starsky tracked the man's scent to the Town Terrace Apartments where the appellant lived with his girlfriend.

The appellant's girlfriend, Betty Ferguson, was found hiding under an interstate bridge. Ms. Ferguson, who was also indicted for the armed robbery, cooperated

fully with the police and spent the rest of the morning going with officers to various places where she believed the appellant might be found. Finally, he was located and when he spotted the officers he ran. When they caught him, they observed fresh cuts on his hands.

Ms. Ferguson testified at the trial, recounting how she and the appellant had gone for an early morning walk and he said he was going to rob the Chateau Motor Inn. She testified that he left her for a short time and came running back with a woman's purse.

In addition to this proof, Ms. Flowers' purse and checkbook were found inside the interstate fence at the point where the man being chased by Mr. Cole climbed over. Furthermore, Mr. Cole positively and unequivocally identified the appellant as the man he chased. Two or three hours after his encounter with the appellant, he picked the appellant's photograph from a six photo array. It was estimated that Mr. Cole only had to observe the collection of photographs for from two to ten seconds before choosing the appellant's photograph.

The appellant presented the testimony of William Mitchell Corley, who testified that the appellant spent the night at his house and that he dropped him off at 6:30 A.M. that morning. He also testified that the appellant and Kenneth Webber, whom Ms. Ferguson also dated, "could just about pass for twins."

Based upon this proof, the jury found the appellant guilty of the three offenses.

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

■ There was ample, indeed overwhelming, evidence from which any rational trier of fact would conclude that the appellant was guilty of all three offenses beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). These issues have no merit.

In another issue the appellant contends that he was convicted on the uncorroborated testimony of his codefendant, Ms. Ferguson.

■ The rule is firmly established in Tennessee that one cannot be convicted on the uncorroborated testimony of an accomplice. There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it, and the corroboration must consist of some fact that affects the identity of the defendant. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 463 (1963).

■ Apart from the testimony of the accomplice, there was ample evidence to convict the appellant. In fact, the accomplice's testimony was not necessary to sustain the conviction. Mr. Cole positively and unequivocally identified the appellant as the man who climbed the interstate fence and who committed the assault on him. Thus, the appellant was clearly shown to be the man who dropped Ms. Flowers' purse and checkbook by the interstate fence a few minutes after the robbery. His injured hands attested the fact that it was he who broke the window. This issue is patently without merit.

In the final issue the appellant questions whether the trial judge abused his discretion in ordering that his sentences be served consecutively. He contends that since the convictions arose out of a single transaction that the public policy of the state demands that there be only one punishment. He relies on language from *English v. State*, 219 Tenn. 568, 411 S.W.2d 702, 707 (1966), which quoted *Dowdy v. State*, 158 Tenn. 364, 13 S.W.2d 794, 795 (1929), which in turn quoted *Patmore v.*

*State,* 152 Tenn. 281, 284, 277 S.W. 892, 893 (1925), to the effect that:

> Even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice is not approved, and, certainly it must be clear that the offenses are wholly separate and distinct. Our own cases appear to prohibit the practice where the offenses grow out of one transaction and involve but one criminal intent.

However, this language from these cases must be considered in the contexts in which these cases arose. In *Patmore,* the charges were possession of a still and manufacture of whiskey. In *Dowdy,* the offenses were driving while intoxicated and public drunkenness. In *English,* the offenses were larceny from the person and gaming at the time of the larceny. Also, the efficacy of these holdings is in doubt since the decision of our Supreme Court in *State v. Holt,* 691 S.W.2d 520, 522 (Tenn. 1984). In *Holt,* our Supreme Court overruled prior contrary decisions of this Court and held that one can be convicted of both manufacturing marijuana and possession of the same marijuana with intent to sell.

This case is more akin to *McBee v. State,* 526 S.W.2d 124, 126 (Tenn.Cr.App.1974), where the defendant entered a Marine Corps reserve facility armed with a rifle. He struggled with the security guard and the guard was shot as they struggled for the defendant's rifle. He disarmed the guard and took the guard's pistol and alarm key. Later, he drove the guard to an isolated area. When he leveled the pistol at the guard, the guard ran and the defendant fired a shot at him. This Court rejected the defendant's theory that there was only one offense since it was a single episode with only one intent. It was held that there were three separate offenses (armed robbery, kidnapping and assault with intent to commit murder) for which three separate convictions and punishments were appropriate.

In determining whether multiple sentences should be served consecutively or concurrently, the issue is not whether they arose out of a single episode, but whether consecutive terms are necessary to protect the public from further criminal conduct by the defendant. If the defendant falls into one or more of five categories of offenders enunciated by our Supreme Court, he may receive consecutive sentences. Among those categories is the "dangerous offender" whose crimes indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. *Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976).

In this case the appellant was on parole for murder in the second degree at the time he committed these offenses. In addition, he fired a bullet into the head of Ms. Flowers at point blank range. Except by the grace of God the appellant would have been guilty of murder in the first degree. In addition, he later fired three shots at the police officer who pursued him. As his crimes all demonstrate, he clearly has little or no regard for human life and is a "dangerous offender." The trial judge did not abuse his discretion in so finding.

There is no merit to any of the issues, and the judgment is affirmed.

WALKER, P.J., and CORNELIUS, J., concur.