FILED

01/23/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 15, 2018

**MORRIS RUCKER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
No. 83-F-2095         Steve R. Dozier, Judge
_____

**No. M2018-00987-CCA-R3-PC**
_____

The Petitioner, Morris Rucker, appeals the Davidson County Criminal Court's summary denial of his petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Morris Rucker, Pro Se, Tiptonville, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In 1984, a Davidson County Jury convicted the Petitioner of assault with intent to commit murder in the first degree with bodily injury, robbery accomplished with the use of a deadly weapon, and assault with intent to commit murder in the first degree but without bodily injury. The trial court sentenced him to consecutive sentences of life, forty years, and twenty years, respectively.

On appeal of his convictions to this court, this court gave the following factual account of the crimes:

On the morning of September 15, 1983, Marion Flowers was employed as the night clerk at the Chateau Motor Inn in Nashville. The motel consisted of a number of trailers that were placed together and the office was also located in a trailer. The front door was covered with a protective grille which could be raised or lowered. Individuals wishing to rent a room presented themselves at the door and the grille was raised to allow the registration forms and the money to be passed between the clerk and the patron.

At approximately 5:30 A.M., Ms. Flowers heard something hit the side of the trailer. Thinking it had been hit by a car, she looked out the window and started to go out the door. She saw a black man wearing a dark jacket and a stocking cap. He inquired about renting a room for a week and she quoted the rate. He left. A short time later one of the windows was broken and the same man stuck his head and hand through the window. In his hand was a pistol. He directed Ms. Flowers not to move and she complied. The man then entered the office through the window and took the cash from the cash register. He also ordered Ms. Flowers to lie down on the floor. He took her purse and finally, as he stood over her, he shot her in the head.

Miraculously, when the bullet hit the bone in her head it fractured into numerous pieces and while she was badly injured, she lived. In fact, after being shot, Ms. Flowers was able to summon the assistant manager who lived nearby and also the police.

Thomas A. Cole, a Metropolitan Police Officer, heard the police broadcast concerning the armed robbery and proceeded west on Interstate 40 toward the motel. Beside the interstate he saw a black male and female walking. The man was carrying something under his right arm and the woman was walking twenty-five to thirty feet behind him. As the officer passed the man, his attention was attracted to him and he looked carefully at him. He braked and began backing up his squad car. The man then fled down a hillside toward the interstate fence. He also turned and fired a shot at the officer, and Mr. Cole responded by returning fire. The man then climbed the interstate fence and the officer followed. He fired two more shots at Mr. Cole, but the officer lost sight of the man in the darkness.

Mr. Cole called for assistance and other officers responded, including a canine officer and his dog, Starsky. Starsky tracked the man's

scent to the Town Terrace Apartments where the appellant lived with his girlfriend.

The appellant's girlfriend, Betty Ferguson, was found hiding under an interstate bridge. Ms. Ferguson, who was also indicted for the armed robbery, cooperated fully with the police and spent the rest of the morning going with officers to various places where she believed the appellant might be found. Finally, he was located and when he spotted the officers he ran. When they caught him, they observed fresh cuts on his hands.

Ms. Ferguson testified at the trial, recounting how she and the appellant had gone for an early morning walk and he said he was going to rob the Chateau Motor Inn. She testified that he left her for a short time and came running back with a woman's purse.

In addition to this proof, Ms. Flowers' purse and checkbook were found inside the interstate fence at the point where the man being chased by Mr. Cole climbed over. Furthermore, Mr. Cole positively and unequivocally identified the appellant as the man he chased. Two or three hours after his encounter with the appellant, he picked the appellant's photograph from a six photo array. It was estimated that Mr. Cole only had to observe the collection of photographs for from two to ten seconds before choosing the appellant's photograph.

The appellant presented the testimony of William Mitchell Corley, who testified that the appellant spent the night at his house and that he dropped him off at 6:30 A.M. that morning. He also testified that the appellant and Kenneth Webber, whom Ms. Ferguson also dated, "could just about pass for twins."

Based upon this proof, the jury found the appellant guilty of the three offenses.

State v. Rucker, 712 S.W.2d 482, 483-84 (Tenn. Crim. App. 1986), perm. app. denied, (Tenn. 1986).

On direct appeal of his convictions to this court, the Petitioner claimed that the evidence was insufficient to support the convictions; that he was convicted based on the uncorroborated testimony of his accomplice, Betty Ferguson; and that the trial court erred by ordering consecutive sentencing. Id. at 484-85. This court affirmed the Petitioner's convictions and effective sentence of life plus sixty years. Id. at 485. In finding the

evidence sufficient and that evidence apart from the accomplice's testimony existed to convict the Petitioner, this court stated that the proof against the Petitioner was "overwhelming" and that Officer Cole "positively and unequivocally" identified the Petitioner as the man who climbed the fence and dropped the victim's purse and checkbook soon after the robbery. Id. at 484.

In June 2001, more than fifteen years after this court affirmed his convictions, the Petitioner filed a petition for post-conviction relief. See Morris Rucker v. State, No. M2001-02020-CCA-R3-PC, 2002 WL 31039346, at *1 (Tenn. Crim. App. Sept. 12, 2002). One of the issues he raised in the petition was that the post-conviction court should grant him relief because DNA testing would prove his innocence. Specifically, he alleged that

> [e]vidence at trial included blood stains claimed by the State to be mine. DNA analysis was not available at my trial. In 2001, RLFP, PCR and VNTR methods were developed for DNA analysis of old blood stains. This will prove my innocence, i.e, the blood was not mine.

Id. at *3. The post-conviction court summarily dismissed the petition as time-barred. Id. at *1. This court affirmed the judgment of the post-conviction court but noted that the dismissal of the petition did not preclude the Petitioner from filing a subsequent petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Id. at *4.

In January 2018, the Petitioner filed such a petition, requesting DNA analysis on a pair of pajamas. In the petition, he asserted,

> These pair of pajamas had blood stains on them that the State said the blood was the [petitioner's] and the State introduced into evidence at trial to [convict] the petitioner. This is why the petitioner is seeking to have these pajamas tested to show that the blood stains found on the pajamas was not his blood; and if DNA analysis was available at the time of the [petitioner's] trial, and tested, the petitioner would have been found not guilty.

The State responded to the petition, advising the post-conviction court as follows:

> Regarding the pajamas referenced in Petitioner's instant Petition, they were located hanging onto a clothes line in the Town Terrace Apartments (where Petitioner resided with his girlfriend). This was where Petitioner was eventually tracked to and apprehended. Ms. Ferguson saw the pajamas

- 4 -

hanging on the clothes line and identified them as the ones Petitioner had been wearing all morning. The pajamas had blood on them. When apprehended, Petitioner was noted to have cuts on both hands.

The State then argued that (1) regardless of the results obtained from DNA analysis of the pajamas, the State would have prosecuted the Petitioner and the jury would have convicted him because the evidence against him was overwhelming; (2) the pajamas were still in existence; (3) the pajamas were never previously subjected to DNA analysis; and (4) the application for analysis was an attempt by the Petitioner to unreasonably delay the execution of the sentence or the administration of justice.

The post-conviction court summarily denied the petition for DNA analysis. In its order, the court agreed with the State that the proof at trial was overwhelming as to the Petitioner's guilt, noting that a police officer "'positively and unequivocally'" identified the Petitioner at trial and that the Petitioner's accomplice-girlfriend testified about his involvement in the crimes. The court concluded that based on the proof, "any DNA analysis of the pajamas would not have proven the Petitioner's innocence or provided the Petitioner a more favorable outcome."

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred by summarily denying his petition for DNA analysis because the State "displayed" the pajamas at trial and used the pajamas to connect him to the crimes. He also contends that the post-conviction court failed to follow the DNA Analysis Act's "guidelines" because the court never stated which "enumerated criteria" of the Act it was using to deny the petition. The State argues that the post-conviction court denied the petition under the first factor of the Act and that the denial was proper because, due to the overwhelming evidence against the Petitioner, the State would have prosecuted him even if the blood on the pajamas had not been his blood. We agree with the State that the post-conviction court did not err by denying the petition.

The Post-Conviction DNA Analysis Act of 2001provides that

> a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is

- 5 -

in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court is obligated to order DNA analysis when a petitioner has met each of the following four requirements:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. Additionally, if DNA analysis would have produced a more favorable verdict or sentence if the results had been available at the proceedings leading up to the conviction or sentence, then the post-conviction court may order DNA analysis when the petitioner meets the requirements of Tennessee Code Annotated section 40-30-305. See Griffin v. State, 182 S.W.3d 795, 798 (Tenn. 2006).

The Act does not require that the post-conviction court hold a hearing on the matter. Dennis R. Gilliland v. State, No. M2007-00455-CCA-R3-PC, 2008 WL 624931, at *3 (Tenn. Crim. App. at Nashville, Mar. 3, 2008). Notably, if the State contests any of the qualifying requirements of the Act, and it is apparent the petitioner cannot establish each requirement, the post-conviction court may summarily dismiss the petition. Charles E. Jones v. State, No. W2014-02306-CCA-R3-PC, 2015 WL 3882813, at *3 (Tenn. Crim. App. at Jackson, June 24, 2015). In other words, the petitioner's failure to establish any single requirement may result in a dismissal of the petition. Id. "The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited." Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *3 (Tenn. Crim. App. at Jackson,

May 26, 2004). On appeal, this court will not reverse the post-conviction court's judgment unless it is not supported by substantial evidence. Id.

Turning to the instant case, the State responded to the petition for DNA analysis, conceding that the Petitioner had established the second and third factors of the DNA Analysis Act but contesting the first and fourth factors. The post-conviction court did not address the fourth factor, that the petition was for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice, in its order. However, given that the Petitioner is serving a sentence of life plus sixty years in confinement, we fail to see, and the State did not explain in its response to the petition, how the Petitioner could be seeking the testing in order to delay the execution of his sentence or the administration of justice. We note that he waited fifteen years after this court stated he could file a petition pursuant to the DNA Analysis Act to file the instant petition. That said, we agree with the State that the post-conviction court denied the petition based upon the first factor, that a reasonable probability exists that he would not have been prosecuted if the DNA analysis had shown the blood was not his.

"'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984). In conducting its analysis of a petitioner's claim, a post-conviction court must presume that the DNA analysis would produce "'favorable'" results to the petitioner. Powers v. State, 343 S.W.3d 36, 55 & n.28 (Tenn. 2011); see Tenn. Code Ann. § 40-30-305(1). Moreover, the court may consider this court's opinions on the petitioner's direct appeal of his convictions and his appeals of prior post-conviction actions. Id. (citation omitted).

Here, the post-conviction court reviewed the evidence and agreed with the State that the proof of the Petitioner's guilt was "overwhelming." The court also considered this court's opinion on the Petitioner's direct appeal of his convictions and noted that this court also found the evidence of the Petitioner's guilt to be overwhelming. Even assuming that the blood on the pajamas is not the Petitioner's blood, the Petitioner has not explained how that result is exculpatory. As noted by the State, the blood on the pajamas could be the victim's blood because the Petitioner stood over her as he shot her in the head. In any event, regardless of whose blood is on the pajamas, we agree with the post-conviction court that the Petitioner has failed to establish that a reasonable probability exists that he would not have been prosecuted or convicted if DNA analysis had shown the blood on the pajamas was not his blood.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of the petition.

_____
NORMA MCGEE OGLE, JUDGE